**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tscott@timscottlaw.com

Attorney for Michael Lustig

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13cr3921-BEN |
| Plaintiff, | Date: January 21, 2014 |
| v. | Time: 2:00 p.m. |
| MICHAEL LUSTIG, | Memorandum of Points and Authorities in Support of Defendant's Motions |
| Defendant. | |

**I.**

**INTRODUCTION**

Mr. Lustig was arrested for the attempted solicitation of an adult female prostitute in June of 2012. That is a misdemeanor in state court, punishable by a maximum of six months in county jail. The case went federal after law enforcement officials used the misdemeanor arrest as an excuse to sift through private communications and data on Mr. Lustig's personal digital devices, eventually uncovering alleged evidence that Mr. Lustig visited underage prostitutes as well. Now the government seeks to subject Mr. Lustig to a fifteen-year minimum-mandatory sentence for these alleged crimes—perhaps even if he did not know that the girls were underage. These motions follow.

1

## II.

### STATEMENT OF FACTS

In June of 2012, the San Diego County Sheriff ran a "sting" operation to catch "johns"—people suspected of soliciting and visiting prostitutes.[1]  Defendant Michael Lustig was caught in one such sting.  Mr. Lustig responded to a provocative internet advertisement for an adult female escort, and he agreed in a recorded phone call to pay money in exchange for sex.

Mr. Lustig drove to meet the "escort" (who was actually a female deputy sheriff) at a Howard Johnson hotel.  He parked his car legally in an outdoor parking lot and went inside to the agreed-upon room on the second floor of the hotel.  The uncover deputy let Mr. Lustig into the room and they began to talk.  Mr. Lustig soon began to suspect that the deputy was not really an escort, and he tried to end the evening and leave.  Sheriff's deputies arrested Mr. Lustig in the hallway immediately outside the room, and read him his rights.  He invoked.

The deputies then took an Apple iPhone and a Kyocera flip phone from Mr. Lustig's pants pocket, presumably on the theory that it was a search incident to arrest.  But after realizing that the phones were in fact phones and not weapons or contraband, they still opened and unlocked both phones, and retrieved data—including internet history, phone numbers, and contacts—from within the devices.  They did so without a warrant.

But the deputies were still not done searching.  They also took a set of keys from Mr. Lustig's pocket.  Although Mr. Lustig had already invoked his right to counsel, deputies

---

[1]   This entire statement of facts pertaining to Mr. Lustig's arrest on June 8, 2012 is taken directly from the Sheriff's arrest report produced during discovery.  A true and correct copy of the narrative portion of this report is attached as Exhibit A to these motions, and Mr. Lustig proffers the facts within the report as evidence that the motion to suppress should be granted. The car and cell phones involved in this case belonged to Mr. Lustig. Although there is no claim to the contrary in the discovery, Mr. Lustig represents that he did not consent to any of the searches in this case and was arrested nowhere near his car.  If the government disputes any of these representations, they can be quickly proven up at an evidentiary hearing when convenient to the Court.

asked him about the keys and his car.  Mr. Lustig lied and replied that he walked to the hotel.  The deputies either ignored or disbelieved this statement, and used the key fob to locate Mr. Lustig's car in the parking lot.  Despite the fact that Lustig denied having a car in the parking lot, and despite the car being lawfully and unobtrusively parked in the parking lot, the deputies decided to have the car towed, ostensibly to "prevent the vehicle from being vandalized or stolen."

Still not content with the state of their evidence, the deputies decided to conduct an "inventory search" of the car.  That "inventory search" resulted in the seizure of five additional cell phones from the center armrest of the vehicle.

The deputies were not done.  The officers searched the data on these cell phones as well.  They opened each of the cell phones in the car, and retrieved further text messages and other incriminating information from the phones. The officers downloaded data from the cell phones onto a disc and took pictures of the cell phones and texts as well.

Ultimately, the government used numbers, texts, and data gleaned from all of the phones—both those taken from Mr. Lustig's person and those in the car—to locate the minor witnesses in this case and build this federal case against Mr. Lustig.  He now moves to suppress the evidence found in the cell phones and all fruit of it—including the text communications, the phone communications, contacts, other phone data, the identity of the minors, and the subsequent statements and identifications made by the minors—as fruit of the poisonous tree of these unlawful seizures and searches.

3

13cr3921-BEN

# III.

# DISCUSSION

## A.   The cell phones and their fruit must all be suppressed under the Fourth Amendment.

"[O]ur analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"[2] Sheriffs' deputies searched Mr. Lustig's person, car, and the contents of his cell phones without a warrant.  The only question is whether these "per se unreasonable" searches were somehow saved by exceptions to the warrant requirement.

### 1.   The two phones on Mr. Lustig's person were properly seized incident to arrest, but taking the data from inside them without a warrant was unconstitutional.

Mr. Lustig concedes at the outset that officers properly searched his pockets and took his cell phones incident to arrest.  They quite reasonably took the phones out of his pockets to make sure they weren't weapons or contraband.  But they should have stopped there once he was arrested and the officers and the evidence were safe.  Instead, the deputies opened the phones and fished around inside them for more evidence to incriminate Mr. Lustig.  There is no dispute that there was no warrant to search the phones, and the only justification for opening the phones and retrieving data would be a search incident to arrest.  But the facts don't fit that exception.  In *Arizona v. Gant*,[3] the Supreme Court clarified that police "may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible

---

[2]      *Arizona v. Gant*, 556 U.S. 332, 337 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted)).

[3]      556 U.S. 332 (2009)

evidence.'"[4] Mr. Lustig was under control and unable to retrieve or destroy any data from inside his cell phone once he was arrested.  *Gant* suggests that once a person is arrested and the cell phone secured, the twin concerns of officer safety and the destruction of evidence no longer justify warrantless rummaging for additional evidence inside the electronic device. There was no justification for officers to unlock the phones and search their contents.  If they wanted to find out what was inside, they should have sought a warrant.  Because they didn't, suppression should result.

There is no Ninth Circuit case allowing the government to search a cell phone incident to arrest.  The First Circuit has held that such a search is *per se* unconstitutional, although there are cases that go the other way as well.[5]  But the Ninth Circuit's decision in *United States v. Cotterman* recently held that the border-search exception does not justify the warrantless search of all digital data in a traveler's possession, demonstrating that even well-established exceptions to the warrant requirement should be construed narrowly in the context of digital searches.[6]  All of these cases combine to show that the warrantless mining of Mr. Lustig's cell phone for incriminating evidence, after he was arrested and the evidence was secured, was a Fourth-Amendment violation.  Suppression should result.

---

[4]     *Id.* at 335 (citing Chimel v. California, 395 U.S. 752, 763 (1969)).

[5]     *See United States v. Wurie*, 728 F.3d 1, 13 (1st Cir. 2013) ("the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person"). *But see United States v. Curtis*, 635 F.3d 704, 712 (5th Cir. 2011) (upholding cell phone search incident to arrest under good-faith doctrine).

[6]     *United States v. Cotterman*, 709 F.3d 952, 957 (9th Cir. 2013) (en banc) ("Our Founders were indeed prescient in specifically incorporating 'papers' within the Fourth Amendment's guarantee . . . . The papers we create and maintain not only in physical but also in digital form reflect our most private thoughts and activities.").

5

**2.    The five other cell phones inside Mr. Lustig's car were improperly seized and searched.**

The search and seizure of five other cell phones in Mr. Lustig's car were even more clearly unconstitutional.  After Mr. Lustig was arrested and secured, officers took keys from his pocket, located his car, "impounded" it even though it was legally parked, and searched his other cell phones as part of a pretextual "inventory" search.  The constitution does not permit these tactics.

**a.    The search of Mr. Lustig's car after his arrest was an illegal search incident to arrest after *Gant*.**

As discussed above, the Supreme Court clarified in 2009 that police "may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'"[7]  Mr. Lustig was arrested upstairs in a hotel room hallway; his car was downstairs in an outside parking lot.  The search-incident-to-arrest doctrine exception does not apply after *Gant*.

**b.    Mr. Lustig's car was not lawfully impounded under constitutional or statutory law.**

The sheriff's report claims that the vehicle was impounded under California Vehicle Code § 22651(h).  But as a matter of Ninth Circuit law, that statute does not justify impounding a legally parked car under these circumstances.  In *United States v. Cervantes*[8] (a case published a month before Mr. Lustig's June 2012 arrest), the district court denied a motion to suppress evidence recovered from the defendant's car.  The government argued, as here, that California Vehicle Code § 22651(h) justified impounding and searching the vehicle.  The Ninth Circuit rejected the argument and reversed.  It held that the Vehicle

---

[7]    *Arizona v. Gant*, 556 U.S. 332, 335 (2009) (citing Chimel v. California, 395 U.S. 752, 763 (1969)).

[8]    678 F.3d 798, 804 (9th Cir. 2012).

13cr3921-BEN

1   Code did not justify impounding a vehicle that was not parked unlawfully or posing a safety

2   hazard—especially given the officers' "investigatory motive for the vehicle impoundment

3   and inventory search."[9]

4          So it was here.  The sheriff deputies were not acting in their community caretaking

5   function in locating Mr. Lustig's car.  In fact, he denied that he even had a car, so their only

6   purpose in searching for a car was to find incriminating evidence against him.  The car that

7   they eventually found was not obstructing traffic or posing a safety hazard.  It could have

8   been easily retrieved by any number of family members or friends with a simple phone call.

9   The impounding of the car was an illegal search under Ninth Circuit law.  Suppression

10  should result.

11

12          **c.     Even if the car was lawfully impounded, a reasonable inventory
                      search does not include extracting data from cell phones—this was
13                    an impermissible "exploratory rummaging" instead.**

14

15          Even if sheriffs lawfully impounded the car and took the cell phones pursuant to an

16  inventory search, it violated the Fourth Amendment to look inside and collect data within the

17  phones.  As the Supreme Court held in *Florida v. Wells*,[10] an inventory search must be

18  conducted pursuant to "standardized criteria" or an "established routine." It "must not be a

19  ruse for a general rummaging in order to discover incriminating evidence."[11]  An inventory

20  of a car's contents simply cannot lawfully include the digital data inside of a cell phone.

21  _____

22      [9]    *Id.* at 807.  *See also United States v. Caseres*, 533 F.3d 1064 (9th Cir. 2008)
             (finding inventory search invalid because searching a lawfully parked car was
23           not justified under the community caretaking purpose or as a parole search);
             *United States v. Maddox*, 614 F.3d 1046, 1049 (9th Cir. 2010) (inventory
24           search violated state law when vehicle was impounded for reasons other than
             to carry out the community caretaking functions)

25

26      [10]   495 U.S. 1, 4 (1990).

27      [11]   *Id.*; *see also Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987).

28

1  That goes beyond any recognized understanding of the inventory exception and describes

2  instead the "general rummaging" that is forbidden by Supreme Court and Ninth Circuit case

3  law.  Suppression should result.

4         **3.      Fruit of the poisonous tree.**

5

6         Under Supreme Court precedent, the exclusionary rule reaches not only primary

7  evidence obtained as a direct result of an illegal search or seizure,[12] but also evidence later

8  discovered and found to be derivative of an illegality or "fruit of the poisonous tree."[13] "The

9  exclusionary rule applies both to direct products of an illegal search—i.e., the physical

10 evidence found during the search itself—and to indirect products of the illegal search—i.e.,

11 statements or physical evidence subsequently obtained in part as a result of the search—if

12 they bear a sufficiently close relationship to the underlying illegality."[14] In other words, the

13 exclusionary rule "extends as well to the indirect as the direct products" of unconstitutional

14 conduct.[15]  The government's entire case can be traced directly back to illegally searched

15 cell phones.  From the identity of the alleged victims to their subsequent statements and

16 identifications to the contents of the cell phones themselves, all evidence must be

17 suppressed.  This motion should be granted.

18

19 **B.     18 U.S.C. § 1591(c) violates the Fifth Amendment by omitting a *mens rea***
   **requirement for an offense with a minimum mandatory sentence of at least 15**
20 **years.**

21        The charging statute is unconstitutional as well.  Mr. Lustig is charged with two

22 _____

23        [12]    *Weeks v. United States*, 232 U.S. 383 (1914).

24        [13]    *Nardone v. United States*, 308 U.S. 338, 341 (1939).

25        [14]    *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011) (quoting
               *United States v. Ladum*, 141 F.3d 1328, 1336-37 (9th Cir. 1998)) (internal
26             punctuation omitted).

27        [15]    *Wong Sun v. United States,* 371 U.S. 471, 484 (1963).

28

13cr3921-BEN

counts of violating 18 U.S.C. § 1591(a), a relatively new statute that appears to be unconstitutional on its face.  The statute provides that:

> Whoever knowingly—
>
> (1)   in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
>
> (2)   benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

The government accuses Mr. Lustig of soliciting commercial sex acts with two minors under the latter prong of § 1591(a).  Because the alleged victims were under 14 at the time of the offense, a 15-year minimum-mandatory sentence applies if the government's allegations are true.[16]  But the way the statute reads, Mr. Lustig did not have to know that the girls were minors, much less know that they were under 14, to be punished with this 15-year min-man: "In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, *the Government need not prove that the defendant knew that the person had not attained the age of 18 years*."[17]

When a defendant has had a "reasonable opportunity to observe the person," this section arguably imposes strict liability instead of a traditional scienter requirement for this element of the offense.  As will be discussed below, if the statute is construed to dispense

---

[16]   18 U.S.C. § 1591(b)(1) (proscribing "imprisonment for any term of years not less than 15 or for life.")

[17]   18 U.S.C. § 1591(c). (Emphasis provided.)

9

entirely with the *mens rea* requirement of the victim's age, it would violate the Due Process Clause of the Fifth Amendment.  This Court should therefore either dismiss the charges as unconstitutional, or read a recklessness *mens rea* into the statute in order to save its constitutionality.

### 1. Supreme Court case law holds that a strict-liability scienter would offend Due Process for non-public-welfare offenses.

When evaluating whether a penal statute should be construed to impose strict liability, the Supreme Court has distinguished between public and non-public welfare offenses.  The Court has defined public welfare offenses as "cases [that] do not fit neatly into any of such accepted classifications of common law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty."[18]  The Court emphasizes that public welfare offenses may also be based on strict liability because "penalties commonly are relatively small, and conviction does not grave damage to an offender's reputation."[19]

The nature of public welfare offenses allows violators to be subjected to criminal responsibility even in the absence of criminal intent. However, when the statute examined is not a public welfare offense, the Supreme Court has rejected the applicability of strict liability.  For example, in *Staples v. United States*, the federal statute at issue prohibited any person from possessing a machine-gun that was not properly registered, and the question before the Court was whether the government had to prove that the defendant "knew the weapon he possessed had the characteristics that brought it within the statutory

---

[18]     *Morrissette v. United States*, 342 U.S. 246 (1952).

[19]     *Id.*

definition of a machine-gun."[20] In holding that the statute did require such knowledge, the Court emphasized the "harsh penalty" of up to 10 years' imprisonment for the offense.[21]

The Court reasoned that "the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary."[22] The Court quoted Blackstone and further explained: "In a system that generally requires a 'vicious will' to establish a crime, imposing severe punishments for offenses that require no mens rea would seem incongruous."[23] The Court even suggested that all felonies may require a culpable mens rea: "After all, 'felony' is, as we noted in distinguishing certain common-law crimes from public welfare offenses, 'as bad a word as you can give to man or thing.' Close adherence to the early cases described above might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense."[24]

The Court cited *Staples* with approval in *United States v. X-Citement Video*.[25] There, the Court analyzed the *mens rea* requirement of 18 U.S.C. § 2252, the statute that prohibits the transportation or shipping of child pornography. The Court held that "our reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them."[26] The Court then cited *Staples*

---

[20]  511 U.S. 600, 602 (1994).

[21]  *Id.* at 616.

[22]  *Id.* (citing 19th century American and English cases.)

[23]  *Id.* at 616-617.

[24]  *Id.* at 618.

[25]  513 U.S. 64 (1994).

[26]  *X-Citement Video, supra*, at 70.

11

13cr3921-BEN

and noted that decision "emphasized the harsh penalties attaching to violations of the statute as a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*."[27]

Applying those principles, the Court found that § 2252 was not a public welfare offense. "The statute is more akin to the common law offenses against the state, the person, property or public morals, that presume a scienter requirement in the absence of express contrary intent."[28] Second, the Court noted that "*Staples* concern with harsh penalties looms equally large respecting §2252: Violations are punishable by up to 10 years in prison as well as substantial fines and forfeiture."[29] Third, the Court held that "*Morrisette*, reinforced by *Staples*, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." In the case of § 2252, because of the First Amendment, the age of the performers "is a crucial element separating legal innocence from wrongful conduct."[30] For these reasons, as a matter of statutory construction, the Court found that the use of "knowingly" in § 2252 applied to all elements of the offense, including the age of the performers, and not just to the act of transporting or shipping the illegal material. The Court, however, advised that "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts."[31]

While *Staples* represents one of the more recent pronouncements of the Supreme Court in this area, perhaps the landmark decision is *Lambert v. California*, where the Court struck down a criminal statute because its mens rea requirements did not

---

[27]     *Id*. at 71.

[28]     *Id*. at 71-72.

[29]     *Id*. at 72.

[30]     *Id*. at 73.

[31]     *Id*. at 78.

13cr3921-BEN

satisfy the Due Process Clause.[32] In *Lambert*, the defendant was convicted of violating a local ordinance that required convicted felons to register. The defendant had attempted to defend the charge by arguing that she did not know that she was required to register, but that defense was refused.[33] The Court explained that lawmakers have latitude "to declare an offense and to exclude elements of knowledge and diligence from its definition" but warned that "due process places some limits on [their] exercise."[34] The Court noted that the defendant was subject to "heavy criminal penalties" – she received a $250 fine and 3 years of probation– and her conduct was merely "passive."[35] As a result, the Court held that application of the statute violated the Due Process Clause, concluding: "Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process."[36]

The concerns expressed by the Court in *Lambert, Staples* and *X-Citement Video* against imposing strict liability for non-public welfare offenses are also present in this case.  First, § 1591 is not a public welfare offense. Similarly to § 2252, it is more akin to common law offenses against the state, person, property or public morals.  Second, violations to § 1591 carry extremely harsh penalties. According to § 1591(b), the victim had not attained the age of 14 years at the time of the offense, which is alleged in this case, the punishment prescribed by statute is "imprisonment for any term of years not less than 15 or for life."  That 15-year min-man higher than any of the offenses evaluated by the Supreme Court in *Lambert, Staples* or *X-Citement Video*, and is one of the highest in the federal criminal code.

---

[32]     355 U.S. 225 (1957).

[33]     *Id.* at 227

[34]     *Id.* at 228.

[35]     *Id.*

[36]     *Id.* at 229-230.

The cases discussed render unconstitutional § 1591(c)'s mandate that "the government need not prove that the defendant knew that the person had not attained the age of 18 years." The Fifth Amendment protects Mr. Lustig from being convicted on strict liability principles of an offense with a 15-year mandatory minimum sentence. Contrary to what the government may argue, it is not sufficient that the statute requires the act of trafficking to be done "knowingly." The age of the alleged victims is also a central issue in this case, because based on the discovery already provided, Mr. Lustig would not be guilty of a federal offense if allegedly minor victims were not involved. If no alleged minors were involved here, discovery reveals that the charges against Mr. Lustig would only give rise to a possible violation of Section 647 of the California Penal Code, a misdemeanor. The differences between the penalties and consequences for conviction under each statute are vast. One results in lengthy incarceration and permanent status as a federal felon and sex offender, the other results in no prison term and an expungeable sentence. As previously discussed, the harshness of the penalties involved requires some level of criminal intent or recklessness. For these reasons, the Fifth Amendment would invalidate § 1591(c) if that section is understood to authorize a 15-year minimum mandatory sentence based on strict liability principles.

> **2.     This Court may avoid the constitutional issue by construing 18 U.S.C. § 1591(c) to still require a *recklessness* scienter.**

The doctrine of constitutional avoidance states that "the Court will not anticipate a question of constitutional law in advance of the necessity of deciding it."[37] "Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other

---

[37]     *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346 (1936) (J. Brandeis, concurring.)

13cr3921-BEN

a question of statutory construction or general law, the Court will decide only the latter."[38]
Finally, "when the validity of an act of the Congress is drawn in question, and even if a
serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first
ascertain whether a construction of the statute is fairly possible by which the question may
be avoided."[39]   A plain reading of   18 U.S.C. § 1591 suggests that such a construction is
possible in this case.

Section 1591 (c) appears to be drafted to dispense only with the knowledge
requirement when there is an opportunity to observe the girl—not to dispense with the
recklessness standard as well.  Reading § 1591 (c) together with § 1591(a) bears this out.
Under § 1591(a), the government must prove either "know[ledge] or "reckless disregard."
But in § 1591(c) the statute only relieves the government of proving that the defendant
*knew*—not that the defendant acted in *reckless disregard*.  If Congress meant to dispense
with the recklessness requirement, it could have easily written § 1591(c) to say that if "the
defendant had a reasonable opportunity to observe the person . . . the Government need not
prove that the defendant knew *or was in reckless disregard of the fact* that the person had
not attained the age of 18 years."  But Congress did not include that language italicized
above.  It dispensed only with the "knowingly" requirement instead.[40]

It is a standard canon of statutory construction that "where Congress includes
particular language in one section of a statute but omits it in another section of the same
Act, it is generally presumed that Congress acts intentionally and purposely in the

---

[38]    *Id.*

[39]    *Ashwander*, *supra*, at 348.

[40]    *Compare* 18 U.S.C. § 1591(a) (defendant must have acted "knowing, or
in reckless disregard of the fact, that . . . the person has not attained the
age of 18 years"), *with* § 1591(c) (if reasonable opportunity to observe,
then "the Government need not prove that the defendant knew that the
person had not attained the age of 18 years")

15

13cr3921-BEN

disparate inclusion or exclusion."[41] That's exactly what Congress did here. If the recklessness mens rea was to be left out of § 1591(c), Congress would have done so itself. As the Supreme Court has held, "silence . . . does not necessarily suggest that Congress intended to dispense with a conventional mens rea element."[42] "On the contrary, [this Court] must construe the statute in light of the background rules of the common law in which the requirement of *some* mens rea for a crime is firmly embedded."[43] Thus, a plain reading of the statute reveals that § 1591(c) only relieves the government of proving knowledge about the alleged victim's age when the defendant had an opportunity to observe the victim. The government must still prove the defendant acted in reckless disregard of that age.

          a.     **The legislative history favors interpreting § 1591 (c) to include a recklessness scienter.**

    The legislative history of § 1591 supports this construction of the statute. The explanatory statement on H.R. 7311, the William Wilberforce Trafficking Victims Reauthorization Act of 2008, which created § 1591(c), states:

> Additionally, a special evidentiary provision is added for those cases under Section 1591(a)(1) in which criminal liability attaches not because of the use of coercion but because of the use of a minor for commercial sexual activity. In such cases, the prosecution will be exempted from having to prove beyond a reasonable doubt that a defendant who had a reasonable opportunity to observe the person recruited, enticed, harbored, transported, provided, obtained or maintained knew that the person had not attained the age of 18 years. This special evidentiary provision reflects a similar provision in the aggravated sexual abuse offense, Title 18, United States Code, Section 2241(d), and is crafted in light of *United States* v. *Xcitement Video*, 513 U.S. 64, 70, n.2 (1994) (exception from presumption of mens rea more appropriate in statutes in which perpetrator necessarily ''confronts the underage victim personally and may reasonably be required to ascertain

---

[41]     *Duncan v. Walker*, 533 U.S. 167, 173 (2001) .

[42]     *Staples*, *supra*, at 605.

[43]     *Id*. (Emphasis provided.)

16

that victim's age''). This approach comports with numerous appellate decisions in related areas of the law, such as the Mann Act. *See, e.g., United States* v. *Jones*, 471 F.3d 535 (4th Cir. 2006).[44]

This statement reveals the reasoning behind the adoption of § 1591(c). First, Congress recognizes that "the prosecution will be exempted from having to prove beyond a reasonable doubt that a defendant who had a reasonable opportunity to observe the person . . . *knew* that the person had not attained the age of 18 years."[45] No mention is made of the recklessness scienter of § 1591(a), meaning that Congress did not intend to change it with the adoption of 1591(c). Second, the explanatory statement draws a parallel between § 1591(c) and 18 U.S.C. § 2241(d). The latter statute criminalizes the aggravated sexual abuse of children and requires "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years. . ." It adds that "the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years." Section 2241(d), however, does not include a recklessness scienter. Congress was aware of the differences with both statutes when it compared them, and it chose to create 1591 (c) by mirroring § 2241(d), only altering the "knowingly" standard of § 1591(a). Again, Congress chose to ignore the recklessness scienter of § 1591(a), instead of explicitly excepting the government from complying with that burden already included in an earlier section of the statute.

Finally, the explanatory statement mentions § 1591(c) comports with a Fourth Circuit case, *United States v. Jones*.[46] In that decision, the Fourth Circuit examined whether 18 U.S.C. § 2423(a), which prohibits the transportation of a minor across state lines, required knowledge about the age of the victim. The Court distinguished § 2423(a)

---

[44]     *Congressional Record*, Vol. 154, No. 185, Dec. 10, 2008, H10904.

[45]     *Id*.  (Emphasis provided.)

[46]     471 F.3d 535 (4th Cir. 2006).

13cr3921-BEN

1  from the child pornography offenses underlying *X-Citement Video* and *Staples,* stating that

2  "the transportation of any individual for purposes of prostitution or other criminal sexual

3  activity is already unlawful under federal law," and thus "the minority of the victim is

4  hardly a factor that distinguishes the defendant's actions from innocent conduct."[47]  But

5  here, the age of the alleged victim does indeed distinguish Mr. Lustig's actions from

6  innocent conduct, because the government's allegations would not give rise to criminal

7  conduct under federal law if the alleged victims were adults.  Thus, Congress did not

8  contemplate interfering with the *X-Citement Video* and *Staples* prohibitions against

9  imposing strict liability for non-public welfare offenses.

10       For these reasons, the Court should find that § 1591(c) does not relieve the

11  government from proving Mr. Lustig acted with reckless disregard about the age of the

12  alleged victim.  Otherwise, the Fifth Amendment would compel the Court to find that

13  portion of the statute unconstitutional.

14

15  **C.    The Yahoo! and cell phone search warrants violated the Fourth Amendment**
       **and failed to comply with the Ninth Circuit's guidance in *Comprehensive Drug***
16       **Testing.**

17       After its illegal search of the phones seized from Mr. Lustig and his car at the time of

18  his arrest, the government obtained search warrants for the contents of the Yahoo! email

19  account boband619@yahoo.com and for other cellular phones allegedly belonging to Mr.

20  Lustig.[48]  This Court should suppress the results of all those searches because: 1) they did

21  not comply with the standards set forth by the Ninth Circuit in *United States v.*

22  *Comprehensive Drug Testing, Inc.,[49]* and 2) the warrants were impermissibly overbroad,

23

24  _____

25       [47]    *Id.*

26       [48]    *See* Exhibits B and C.

27       [49]    621 F.3d 1162, 1180 (9th Cir. 2010) (en banc).

28

13cr3921-BEN

1.   **The Yahoo! and cell phone search warrants did not comply with the Ninth Circuit's guidelines in *Comprehensive Drug Testing*.**

In *Comprehensive Drug Testing,* the Ninth Circuit established clear guidelines for reconciling the search and seizure of electronically stored information with the privacy rights guaranteed by the Fourth Amendment.  The Court was concerned that "the pressing need of law enforcement for broad authorization to examine electronic records, so persuasively demonstrated in the introduction to the original warrant in this case creates a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant."[50]  To alleviate that concern, the Court adopted the following guidelines for the search of electronically-stored information:

    a.     Magistrate judges should insist that the government waive reliance upon the plain view doctrine in digital evidence cases.

    b.    Segregation and redaction of electronic data must be done either by specialized personnel or an independent third party.  If the segregation is to be done by government computer personnel, the government must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.

    c.    Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora.

    d.    The government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents.

    e.    The government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept.[51]

The government did not attempt to comply with these guidelines in this case.

    **a.  The government did not waive reliance on the plain view doctrine.**

Here, the *Comprehensive Drug Testing* guidelines were not followed in regards to

---

[50]   *Comprehensive Drug Testing, supra*, at 1176.

[51]   *Id.* at 1180 (Kozinski, C.J., concurring).

13cr3921-BEN

the Yahoo! or cell phone search warrants.  First, the government did not waive reliance on the plain view doctrine, as required by the Ninth Circuit.  The Court warned heavily against applying the plain view doctrine to searches of electronically-stored information.

> Since the government agents ultimately decide how much to actually take, this will create a powerful incentive for them to seize more rather than less: Why stop at the list of all baseball players when you can seize the entire Tracey Directory? Why just that directory and not the entire hard drive? Why just this computer and not the one in the next room and the next room after that? Can't find the computer? Seize the Zip disks under the bed in the room where the computer once might have been. Let's take everything back to the lab, have a good look around and see what we might stumble upon.[52]

Here, the Yahoo! and cell phone search warrants did not contain a waiver by the government of the plain view doctrine, nor did the accompanying affidavits.[53] Therefore, suppression should result.

### b.   The segregation and redaction of the data received from Yahoo! and retrieved from the cellular phones was not performed by specialized personnel.

As discussed above, to comply with *Comprehensive Drug Testing* the government had to entrust the results of information received from the warrant to specialized personnel that would segregate the relevant data from irrelevant private material.  Here, it is unknown who reviewed the returns from the Yahoo! search warrant, or who performed the forensic searches on the cellular phones.  The reports generated by those returns have not been disclosed to the defense to this date.  The Yahoo! search warrant promised "the personnel conducting the investigation will complete the analysis within 90 days of receipt of data from the service provider. . ."[54]  That was almost one year ago and no information has been disclosed about the analysis performed.  If case agents performed those searches by reading

---

[52]   *Comprehensive Drug Testing*, supra, at 1171.

[53]   *See*, *generally*, Exhibits B and C.

[54]   Exhibit B at 17.

13cr3921-BEN

through the warrant returns, that conduct would run afoul of *Comprehensive Drug Testing*. The same principle would apply to the results for any forensic testing done on the cellular phones.  Having case agents searching each of the phones is not authorized by Ninth Circuit caselaw.  For this reason also, suppression should result.

> **c.    Although the affidavit included a protocol for limiting the scope of the search, it was not followed by government agents.**

*Comprehensive Drug Testing* requires the government to search electronically-stored information through a protocol designed to reveal only the information for which probable cause exists.  The affidavit for the Yahoo! search warrant indicates that "all forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant."[55]  Similarly, the affidavit for the cell phone search warrants states that "all forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant."[56]  However, it does not appear such search protocols were used.  No reports have been provided that confirm the government's compliance with these protocols.  If government agents simply read through each of the e-mails provided by Yahoo! to determine which was relevant to its investigation, or just looked through the cell phones to determine what information was necessary to the case, that would run afoul of *Comprehensive Drug Testing*.  Such conduct offends Mr. Lustig's Fourth Amendment rights.  Suppression should result.

> **d.    The government did not destroy non-responsive data and did not keep the court informed of its actions in that regard.**

The Ninth Circuit requires the government to destroy electronically-stored

---

[55]    *Id*.

[56]    Exhibit C at 11-12.

21

13cr3921-BEN

information that falls outside the scope of a search warrant.  Moreover, it must keep the court informed of its compliance in that regard.  Here, it is unknown how many of the emails received from Yahoo! were related to the government's investigation and what protocol was followed regarding the non-responsive information.  No information has been provided about whether the government complied with the Ninth Circuit's guidelines. However, since the other *Comprehensive Drug Testing* guidelines were not followed, it seems likely that this one was disregarded as well.  Suppression should result.

> **e.  The government's failure to abide by *Comprehensive Drug Testing* should result in the suppression of all Yahoo! and cell phone search warrant evidence.**

The Ninth Circuit expressly stated in *Comprehensive Drug Testing* that governmental disregard for the protections of the Fourth Amendment should not be rewarded.  The Court held that "when, as here, the government comes into possession of evidence by circumventing or willfully disregarding limitations in a search warrant, it must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence or any fruits thereof."[57]  For this reason, confronted with the government's multiple violations of Mr. Lustig's Fourth Amendment rights, this Court should order the suppression of all evidence obtained by the government in connection with the Yahoo! and cell phone search warrants.

> **2.  The Yahoo! search warrant was overbroad because it impermissibly authorized the wholesale seizure of the contents of the account.**

Descriptions in warrants must be specific enough to enable the person conducting the search to reasonably identify the things to be seized.[58]  The Ninth Circuit disfavors

---

[57]  *Comprehensive Drug Testing*, supra, at 1174.

[58]  *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

22

1    unnecessary wholesale seizures of electronic media, particularly in the absence of an

2    affidavit that justifies and explains the exercise of such broad authority.  As the Court has

3    explained, "we do not approve of issuing warrants authorizing blanket removal of all

4    computer storage media for later examination when there is no affidavit giving a reasonable

5    explanation...as to why a wholesale seizure is necessary."[59]  When evaluating claims of

6    overbreadth in a warrant, the Court uses a three-part test: "(1) whether probable cause

7    exists to seize all items of a particular type described in the warrant; (2) whether the

8    warrant sets out objective standards by which executing officers can differentiate items

9    subject to seizure from those which are not; and (3) whether the government was able to

10   describe the items more particularly in light of the information available to it at the time the

11   warrant issued."[60]

12        The warrant at issue does not meet those requirements.  First, there was no probable

13   cause to request "all electronic mail, images, text messages, histories, buddy lists, profiles,

14   method of payment, detailed billing records, access logs, transactional data, and any other

15   files associated with the following accounts. . ."[61] from the boband619@yahoo.com

16   account.  The government did not allege in the warrant that the account was used solely in

17   connection with the alleged sex trafficking offenses, and thus a request for the entire

18   contents of the account was facially overbroad.  That type of broad request "has been

19   characterized as the kind of investigatory dragnet that the fourth amendment was designed

20   to prevent."[62]

21        Second, although the affidavit set out standards for differentiating the items subject

22   to seizure from those which are not, the government appears to have entirely disregarded

23

24        [59]    *United States v. Hill*, 459 F.3d 966, 975 (9th Cir. 2006).

25        [60]    *United States v. Hay*, 231 F.3d 630, 637 n. 5.(9th Cir. 2000).

26        [61]    Exhibit B at 20.

27        [62]    *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982).

28

13cr3921-BEN

1  those standards after it received the information.  The government asserted that "analyzing

2  the data to be provided by Yahoo may require special technical skills, equipment and

3  software."[63]  It added that "keywords need to be modified continuously based on the results

4  obtained... the personnel conducting the examination will complete the analysis within

5  ninety (90) days of the receipt of the data."[64]  However, no reports have been provided to

6  the defense detailing how the government complied with these standards.  Having a case

7  agent read through the returns is insufficient under Ninth Circuit caselaw.

8         Third, at the time it requested the warrant, the government had enough information

9  to appropriately limit the scope of the search.  At that point in the investigation, the

10  government had identified the email accounts of several of the alleged victims involved in

11  the alleged offenses, and could have requested communications between

12  boband619@yahoo.com and those accounts.  The government also had knowledge of the

13  dates of many of the alleged communications between Mr. Lustig and the alleged victims.

14  Those dates could have been included in the warrant, instead of asking for "all content"

15  associated with the account.

16         For these reasons, the Yahoo! search warrant was overbroad and suppression of all

17  documents produced in compliance with it should result.

18

19  **D.    The government's administrative subpoena to Craigslist violated the Electronic
       Communications Privacy Act and the Constitution.**

20

21         As part of its investigation, the government served an administrative subpoena on

22  Craigslist requesting all postings made by boband619@yahoo.com on that website.

23  Although that subpoena has not yet been disclosed by the government, the affidavit to the

24  Yahoo! search warrant reveals the following: "I contacted Special Agent (SA) Carla Croft

25  _____

26       [63]      Exhibit B at 16.

27       [64]      *Id.* at 17.

28

13cr3921-BEN

and FBI Analyst Edgar Fritz who submitted various administrative subpoenas for

telephone, e-mail, and Internet Protocol (IP) address subscriber information *and to*

*Craigslist.org to obtain all records posted by* boband619@yahoo.com."[65]   The returns of

that subpoena consisted of 35 pages of postings by boband619@yahoo.com on Craigslist.[66]

The government's administrative subpoena to Craigslist was invalid because: 1) it

violated the ECPA by obtaining "electronic communications" without a warrant or notice

to the consumer; and 2) it constituted a Fourth-Amendment violation by breaching a

legitimate expectation of privacy in otherwise anonymous online postings.

### 1. The government violated the ECPA by obtaining and reviewing "electronic communications" without a warrant or notice to the consumer.

Congress enacted the ECPA as an amendment to Title III, in order "to update and

clarify federal privacy protections and standards in light of dramatic changes in new

computer and telecommunication technologies."[67]   In drafting the ECPA, Congress

intended to "fairly balance[] the interests of privacy and law enforcement."[68]   But here, the

government violated the ECPA and the Constitution when it obtained the content of

Craigslist postings by administrative subpoena.   This is so because: a) the postings

constitute "electronic communications" under the ECPA; and b) the government obtained

these communications without the court-issued warrant or customer notification that the

statute requires.

### a. Craigslist postings are "electronic communications."

By its terms, the ECPA is designed to regulate the government's access to

---

[65]     Exhibit B at 11. (Emphasis provided.)

[66]     Exhibit D.

[67]     132 Cong. Rec. S. 14441 (1986).

[68]      S. Rep. No. 99-541 (1986).

"electronic and wire communications."[69]  18 U.S.C. § 2510 defines electronic and wire communications for purposes of the ECPA.[70]  Under § 2510(12) "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce."[71]  18 U.S.C. § 2510(1), in turn, defines "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce."

Craigslist postings are substantive communications.  They certainly fit within the broad definition of "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature..."  They are made by individuals on their computers, transmitted via cable and wire internet service to Craigslist's servers, and are then relayed to other Craigslist users through the internet, again via cable and/or wire.  They are thus "transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." These communications are thus are squarely within the definition of "electronic or wire communications" and are governed by the ECPA.

---

[69]     See generally 18 U.S.C. § 2701 et seq.

[70]     See e.g. In re United States for an Order Directing Provider of Elec. Commun. Serv. to Disclose Records to the Gov't, 620 F.3d 304, 309 (3d Cir. 2010) (using § 2510 to define electronic and wire communications for purposes of the ECPA).

[71]     The statute also includes some definitions of exclusions from this definition, none of which are applicable here.

26

1

2

**b. "Electronic communications" can only be obtained by a warrant or through the consent of the subscriber.**

3   The compelled disclosure of electronic communications by a communications

4   service provider (like Craigslist) is governed by 18 U.S.C. § 2703.  Section 2703(a)

5   provides that the government may require disclosure of communications that have been

6   stored for 180 days or less only pursuant to a warrant.[72]

7   Even when the communications have been in storage for 180 days or longer, §

8   2703(b) still protects the warrantless disclosure of communications.  Subsection (b)

9   provides several different scenarios for obtaining these electronic communications: either

10   the government has to proceed by warrant; give notice and get consent from the consumer;

11   or use an administrative subpoena and settle for information that does not include

12   "electronic communications."[73]  Stated differently, if the government chooses to proceed

13   without notice to the consumer (as occurred here) then the government cannot search and

14   seize electronic communications themselves without a warrant.[74]  The only information

15   that can lawfully be obtained by administrative subpoena, without notice to the customer,

16   are those biographical and administrative items listed under § 2703(c)(2)—and that

17   _____

18   [72]   *See* § 2703(a) ("[A] governmental entity may require the disclosure by a
       provider of electronic communication service of the contents of a wire or
19       electronic communication, that is in electronic storage in an electronic
       communications system for one hundred and eighty days or less, *only*
20       *pursuant to a warrant* issued using the procedures described in the Federal
       Rules of Criminal Procedure (or, in the case of a State court, issued using
21       State warrant procedures) by a court of competent jurisdiction.") (emphasis
       provided).

22   [73]   *Id.*

23   [74]   *See* § 2703(b)(1)(A) (permitting obtaining electronic communications
24       "without required notice to the subscriber or customer, if the governmental
       entity obtains a warrant issued using the procedures described in the Federal
25       Rules of Criminal Procedure (or, in the case of a State court, issued using
       State warrant procedures) by a court of competent jurisdiction.").  *See also* §
26       2703(b)(1)(B) (allowing communications to be disclosed by subpoena or
       court order, only "with prior notice from the governmental entity to the
27       subscriber or customer[.]").

28

1   subsection specifically excludes "electronic communications" from the scope of the

2   request.[75]

3         18 U.S.C. § 3486 (which governs administrative subpoenas generally) is in accord.

4   It provides that a "subpoena . . . to a provider of electronic communication service or

5   remote computing service, in an investigation of a Federal offense involving the sexual

6   exploitation or abuse of children *shall not extend beyond . . . requiring that provider to*

7   *disclose the information specified in section 2703(c)(2),*[76] which may be relevant to an

8   authorized law enforcement inquiry; or . . . requiring a custodian of the records of that

9   provider to give testimony concerning the production and authentication of such records or

10  information."

11        These statutes demonstrate that the government obtained the Craigslist postings

12  associated with boband619@yahoo.com unlawfully.  The postings were electronic

13  communications, as described above.  The government did not get a warrant.  It did not get

14  consumer consent either.  Instead, it relied upon administrative subpoena alone, and

15  obtained and read these protected electronic communications without any statutory

16  authority whatsoever.

17        The government may argue that Craigslist disclosed more than the subpoena

18  requested.  But it is clear the government fully intended for Craigslist to disclose the

19  "postings."  Moreover, in any case the government should have either sent the wrongly-

---

21  [75]  *See* § 2703(c)(1) ("A governmental entity may require a provider of
22        electronic communication service or remote computing service to disclose a
        record or other information pertaining to a subscriber to or customer of such
23        service (not including the contents of communications) only when the
        governmental entity: obtains a warrant, court order, has consent, etc...").

24  [76]  That information—the information that requires only a subpoena—is limited
25        to: "(A) name;  (B) address;  (C) local and long distance telephone
        connection records, or records of session times and durations; (D) length of
26        service (including start date) and types of service utilized; (E) telephone or
        instrument number or other subscriber number or identity, including any
        temporarily assigned network address; and (F) means and source of payment
27        for such service (including any credit card or bank account number)".

28

13cr3921-BEN

1    disclosed information back to Craigslist, or sought a warrant or consent if it wanted to look

2    at the contents.  The government may not benefit from unlawful disclosures that it

3    provoked through its own subpoenas.  Third, the legislative history of the ECPA shows that

4    the government must "strictly abide" by its requirements; if there was any over-disclosure

5    of documents, the government must rectify, not exacerbate, the error.[77]

6          For all of these reasons, the government's subpoena was unlawful, and suppression

7    of all returns should result.

8          **2.    The warrantless search violated the Fourth Amendment.**

9

10         The warrantless seizure of these documents violated the Fourth Amendment.  A

11   "Fourth Amendment search occurs when the government violates a subjective expectation

12   of privacy that society recognizes as reasonable."[78]  Craiglist's personal postings are

13   anonymous—in fact, they are required to be anonymous.  One of the commonly-understood

14   features of Craigslist is that the posting person is not putting their contact information or

15   identity into the public realm.  Rather, posting parties receive responses that are routed to

16   their email addresses in the blind, without disclosing the email addresses to the responding

17   parties.  The posting party can then screen the responses and decide who, if anyone, to

18   engage in further discourse.  To gain the identity and full catalogue of posts that anyone

19   puts up is far more information than what would be available publicly.  It violates a

20   subjective expectation of privacy, as evidenced by Craigslist's rules.  That subjective

21   expectation is objectively reasonable, as it is consistent with federal statutes passed by

22

---

23   [77]   *See e.g. Freedman v. Am. Online, Inc.*, 303 F. Supp. 2d 121, 127 (D. Conn.

24         2004) ("Even if AOL acted without lawful authority in disclosing the
         information, this does not absolve Defendants from unlawfully requesting or
25         soliciting AOL's disclosure. Putting the burden and obligation on both the
         government and ISPs is consistent with Congress' intent to protect personal
26         privacy. *Violation by one does not excuse the other.*") (emphasis provided).

27   [78]   *See Kyllo v. United States*, 533 U.S. 27, 33 (2001)

28

29

elected officials in response to concerns over internet and electronic privacy.  In this context, the ECPA is not exclusively a statutory mechanism for suppression, but rather a public expression of the fact that warrantless searches of electronic communications violate a reasonable expectation of privacy.  The government's actions thus amount to a Fourth Amendment violation in addition to the statutory problems described above.  Suppression should result.

**IV.**

**CONCLUSION**

For all these reasons, Mr. Lustig respectfully requests the Court grant his motions and suppress all evidence illegally obtained by the government in this case.

DATED: December 31, 2013                    Respectfully submitted,

                                            */s/ Timothy A. Scott*

                                            Timothy A. Scott

                                            Attorney for Michael Lustig

30

13cr3921-BEN