LAURA E DUFFY
United States Attorney
ALESSANDRA P. SERANO
Assistant U.S. Attorney
California Bar No.: 204796
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8104
Fax: (619) 546-0510
Email:  Alessandra.p.serano@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13-CR-3921-BEN |
| Plaintiff, | Date:  January 21, 2014<br>Time:  2:00 p.m. |
| v. | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:** |
| MICHAEL LUSTIG, | |
| Defendant. | 1) **SUPPRESS EVIDENCE FROM CELL PHONES SEIZED LUSTIG'S PERSON;** |
| | 2) **DISMISS INDICTMENT BECAUSE §1591 IS UNCONSTITUTIONAL;** |
| | 3) **SUPPRESS EVIDENCE DUE TO VIOLATION OF CDT;** |
| | 4) **SUPPRESS EVIDENCE OBTAINED BY ADMINISTRATIVE SUBPOENA** |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, LAURA E. DUFFY, United States Attorney, and Alessandra P. Serano, Assistant United States Attorney, and hereby responds to Defendant's above-captioned motions.  This response and opposition is based upon the files and records

of the case together with the attached statement of facts, and the memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On October 23, 2013, a two-count Indictment was returned in the Southern District of California, charging Defendant Michael Lustig ("Lustig") with sex trafficking of a minor in violation of 18 U.S.C. § 1591.

Trial is scheduled for February 19, 2014.

# II

## STATEMENT OF FACTS

### A. **The Initial Lead**

On June 8, 2012, San Diego Sheriff's Deputies Chase Chiappino and George Crysler, both with the Vista COPPS unit, conducted a "john op" targeting prostitution customers at the Howard Johnson motel in Encinitas, CA.[1]  An online prostitution ad was posted, which Lustig responded to by phone, and stated his name was "George." Upon his arrival, he was arrested for Cal. PC 647(b) (soliciting a prostitute).  The ad Lustig responded to advertised an adult female.

At the time of Lustig's arrest, deputies seized and searched incident to arrest an Iphone (619-791-6552) found in his pocket.  The web browser displayed the online ad for the undercover officer posing as a prostitute.  A second phone (purple Kyocera flip phone with number 619-634-9405) was located in another pocket.  A search of that phone incident to arrest revealed multiple prostitution related texts such as "U wanna hook up for a rewarding time this evening?" "Please confirm u r 18 years or older." "…see if we want a mutually beneficial relationship." "I still have the room if u wanna earn more & finish what we started."

---

[1] A copy of the Sheriff's Deputy's report is attached to Lustig's motion at Ex. A.

Lustig had a set of car keys in his pocket, but denied that he drove a vehicle to the motel.  However, despite Lustig's lie, deputies located a vehicle that matched the car keys found in Lustig's pocket.  To avoid the vehicle from being damaged or stolen, deputies towed the vehicle and later performed an inventory search.  In the vehicle deputies located five additional phones.  Two of those phones included a Verizon Wireless Samsung cell phone ((619) 977-4300) and a Cricket Samsung cell phone ((619)799-3816), both located in the center console of the vehicle.  Deputies conducted a brief search of the five phones.[2]  The Verizon Wireless Samsung displayed text messages such as, "Hey i have a room", "…you think you can front me the money for our date…"  The Cricket Samsung cell phone displayed text messages such as, "did you get the room", "today?", "Hey, U free?"

A listing in the Cricket Samsung phone was for "Dominick", which had the number (619) xxx-3539 assigned to it.  Another phone number assigned to "Dominick" was located inside Lustig's iPhone (found in his pocket) was (619) xxx-6033.  Thus, there were two numbers associated with "Dominick" each saved in a different phone belonging to Lustig.

A search through law enforcement databases displayed the latter phone number for "Dominick" as being associated with a twelve year old minor female (MF1).  Lustig's Cricket Samsung phone showed 39 text messages to or from MF1 between March 24, 2012 and June 8, 2012.  There were over 110 received, sent or missed calls between Lustig and MF1 between the same dates.

Deputy Chiappino later investigated the contacts inside Lustig's Kyocera flip phone, one of the phones found on his person.  One of the contacts in Lustig's Kyocera phone was under the name of "Andrew" and displayed the telephone number (602) xxx-8687.  Deputy Chiappino conducted a search through law enforcement

---

[2] Of the five phones, one was locked and could not be searched.  Two others had no evidence relating to prostitution. Thus, the only two phones of note are the two Samsung phones described.

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                                    *13-CR-3921-BEN*

databases, which displayed that phone number being associated with a 14 year old minor female (MF2). Lustig's phone displayed over sixty text messages between Lustig and MF2 between October 13, 2011 and December 15, 2011. These text messages appeared to use words to conceal the true meaning of what they were talking about. Lustig and MF2 used the words "Bookstore" and "Library" as terms to meet up for a date of prostitution. Some of those text messages read as follows: "Hey is bookstore open at all today I'm in desperate need of books rite now…" "Where are you? CV, LM or ??" "U free sumtime during the next 2 hours?" "Yes wuts tha latest time yu can cum?" "Is tomarrow morning or noon possible if not thts fine but tomarrow would be best for me".

**B. MF1-2 are Interviewed**

On July 3, 2012, Deputies Crysler and Chiappino contacted MF1 at her residence and interviewed her in reference to the text messages between her and Lustig. During this interview MF1 identified Lustig through a photographic line up as an individual she knew as "George". MF1 stated Lustig would pay her $80 each time they met for a "hand job." MF1 stated she met with Lustig approximately five to seven times between March 2012 and June 2012. MF1 confirmed her old phone numbers were (619) xxx-6033 and (619) xxx-3539, which matched up with the number Lustig had saved for "Dominick." MF1 confirmed that she communicated with Lustig via text messaging and verbal conversation with her cell phones.

On July 3, 2012, Deputies Crysler and Chiappino contacted MF2 at her school and interviewed her reference the text messages. During this interview MF2 identified Lustig through a photographic line up as an individual she knew as "George". MF2 stated she had full sex with Lustig approximately three times during October and November, 2011. Lustig would pay her $200 each time. MF2 stated she was thirteen years old while she was involved with prostitution with Lustig. MF2 confirmed her old phone number was indeed (602) xxx-8687. MF2 confirmed that

she communicated to Lustig via text messaging and verbal conversation using (602) xxx-8687.

**C. Further Investigation**

Deputies located motel receipts at various motels on El Cajon Blvd under Lustig's name for the date ranges referenced above. Deputy Chiappino obtained video footage of Lustig in his dark colored sedan with MF1 parked in the parking lot, getting out of the car and entering a room on May 30, 2012. About 25 minutes later, they exit the room and get back into the car. MF1 goes in the back seat of the car.

**D. Subsequent Search Warrants were Obtained to Search the Phones Found in the Vehicle**

Although the two cell phones located in Defendant's vehicle were searched by San Diego Sheriff's Deputies pursuant to the lawful arrest of Lustig for prostitution in June 2012, the United States sought and obtained search warrants for the two phones and the vehicle after he had been arrested for the current charges.[3] Both of the search warrants are attached to Lustig's motion as Exhibits at pages 15-28 and 29-41. In the search warrants, the FBI agent who swore out the affidavit informed the magistrate judge that the phones located in the car had been previously searched, but that none of that information had been included in the application for the search warrant. See Lustig's Motion, Ex. 25-4, page 10.

## III

## ARGUMENT

Lustig has filed 4 motions. To aid the Court in its resolution of the pending motions, the United States has adopted the numerical order presented by the defense. The response to each motion is listed below.

---

[3] In addition, the search warrant application sought authorization to search two additional phones in Lustig's possession at the time of his arrest for the federal charges. Lustig does not challenge the validity of the search for those phones.

*United States' Response in Opposition to Defendants' Motion to Suppress Evidence*          *13-CR-3921-BEN*

### A. **The Evidence Located in the Cell Phones was Lawfully Obtained**

Lustig takes issue with the seizure and search of cell phones seized from his person and from his vehicle when he was arrested on state prostitution charges in June 2012. Each argument is addressed in turn.

### 1. **Cell Phones Found on Lustig's Person were Lawfully Searched**

"The Fourth Amendment prohibits unreasonable searches and seizures by the Government." United States v. Valdes-Vega, 685 F.3d 1138, 1143-44 (9th Cir. 2012) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). "Warrantless searches by law enforcement 'are per se unreasonable under the Fourth Amendment - subject to a few specifically established and well-delineated exceptions.'" United States v. Cervantes, 678 F.3d 798, 802 (9th Cir. 2012) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." Arizona v. Gant, 556 U.S. 332, 338 (2009).

However, it is well established that searches incident to arrest are an exception to the warrant requirement. United States v. Chadwick, 433 U.S. 1, 16 (1977); United States v. Edwards, 415 U.S. 800, 802 (1974); United States v. Robinson, 414 U.S. 218, 224 (1973). The exception includes the arrestee's person, any items or containers located on the person or within the arrestee's reach at the time of arrest. United States v. Robinson, 414 U.S. at 224; United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007). Several circuits have held that this exception includes searching the contents of an arrestee's cell phone, including text messages, pictures and stored phone numbers.[4] United States v. Curtis, 635 F.3d 704, 712 (5th Cir. 2011); United States v. Pineda-Areola, 372 Fed. Appx. 661, 663 (7th Cir. 2010); United States v. Fuentes, 368 Fed. Appx. 95, 98-99 (11th Cir. 2010); United States v. Murphy, 552 F.3d 405, 411 (4th Cir. 2009); Silvan W. v. Briggs, 309 Fed. Appx. 216, 225 (10th Cir. 2009); United States v.

---

[4] But see United States v. Wurie, 728 F.3d 1 (1ˢᵗ Cir. 2013) which held that a search of a cell phone incident to arrest unlawful.

*United States' Response in Opposition to Defendants' Motion to Suppress Evidence*                    *13-CR-3921-BEN*

*Finley*, 477 F.3d at 260. The search incident to arrest doctrine permits a police officer who makes a lawful arrest to conduct a warrantless search of the arrestee's person and the area "within his immediate control."  <u>Davis v. United States</u>, 131 S. Ct. 2419, 2424 (2011) (citing <u>Chimel v. California</u>, 395 U.S. 752, 763 (1969)).

Although several other circuits have held that the exception covers cell phones, neither the Supreme Court or the Ninth Circuit has addressed this precise issue. However, the District Court in the Northern District of California issued an instructive opinion in <u>United States v. Hill</u>, 2011 U.S. Dist. LEXIS 4104 (N.D. Ca. 2011).  In Hill, the police stopped Hill in his vehicle on suspicion of him exposing himself to a minor female child.  Once detained, officers searched Hill's person and recovered an Iphone from his pants.  On scene, officers searched through the phone and discovered images of a young girl exposing herself to Hill.  Officers arrested Hill and brought him and the iPhone back to the station.  At the station, an officer continued to search the phone and found additional evidence of child pornography. Hill challenged the initial search of the cell phone.

The district court first found that the iPhone found on his person at the time of his arrest was part of his clothing, no different that "a wallet taken from a defendant's person" as opposed to an item within the reach of a person.  <u>Hill</u>, 2011 U.S. Dist. LEXIS at *21.  This finding, that the phone was part of the person, made the cases that held that a secure container searched after an arrest inapplicable.  See e.g. <u>Arizona v. Gant</u>, 556 U.S. 332 (2009); <u>United States v. Maddox</u>, 614 F.3d 1046 (9th Cir. 2010).

In this case, the two phones found on Lustig were part of his person just as the scenario in <u>Hill</u>.  Officers had the authority to search the phones incident to arrest, just as they would for any other item found on Lustig such as a wallet or bag.

Courts have recognized that the search incident to arrest exception relating to cell phones includes cases where the incriminating nature of the phone is identified is

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                                                         *13-CR-3921-BEN*

"immediately apparent" and that the information had a potential to be destroyed (new incoming calls delete older call logs for example).  United States v. Brooks, 367 F.3d 1128, 1135 (9th Cir. 2004)(discussion re: exigent circumstances related to destruction of evidence); United States v. Young, 278 Fed. Appx. 242, 245-6 (4th Cir. 2008)(to prevent text messages being automatically deleted, officers were permitted to search phone incident to arrest); United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007)(search incident to arrest of cell phone to prevent destruction of evidence was proper); United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996)(law enforcement may immediately search or retrieve incident to arrest information from a pager in order to prevent destruction of evidence); United States v. Santillan, 571 F.Supp.2d 1093, 1101-3  (D. Az. 2008); United States v. Chan, 830 F.Supp. 531, 534-36 (N.D. Ca. 1993).

In this case, Lustig used a phone to call the online prostitution advertisement. Upon his arrest, deputies located two phones on his person and found information related to the crime of arrest, solicitation of prostitution.  Due to the nature of the electronic information being automatically deleted with the passing of time, the search of the phone was permitted under the search incident to arrest exception.

## 2. The Search of Lustig's Car Including the Cell Phones Found in the Car were Lawfully Seized and Searched

### a. The Search of the Phones Found in Lustig's Car Without a Warrant was Lawful

Different rules apply to a search "of a person" and a search of the "area within the control of the arrestee."  United States v. Robinson, 414 U.S. 218, 224 (1973).  For the latter, warrantless searches are "conducted for the twin purposes of finding weapons the arrestee might use, or evidence the arrestee might conceal or destroy."  United States v. Maddox, 614 F.3d 1046, 1048 (9th Cir. 2010) (citing Chimel, 395 U.S. at 762-63).

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                    *13-CR-3921-BEN*

However, in <u>Gant</u>, the United States Supreme Court expanded these dual rationales in relation to vehicles and concluded:

> Circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."

<u>Gant</u>, 556 U.S. at 343 (quoting <u>Thornton v. United States</u>, 541 U.S. 615, 632 (2004)).

<u>Gant</u> stands for the proposition that law enforcement may now search vehicles incident to arrest for evidence related to the crime of arrest.

In <u>Gant</u>, the Supreme Court affirmed the lower court's decision to suppress evidence found in a vehicle because the search incident to arrest doctrine did not apply. Gant, 556 U.S. at 335.   Because the items found in the vehicle (drugs and drug paraphernalia) were unrelated to Gant's crime of arrest (driving on a suspended license), the Court held that the automobile exception delineated in <u>New York v. Belton</u>, 453 U.S. 454 (1981) and <u>Chimel</u> did not apply in Gant's case.

However, while the <u>Gant</u> Court suppressed the evidence, the <u>Gant</u> opinion affirmed the long standing practice of permitting the warrantless search of a vehicle including all containers within the vehicle.  <u>Id.</u> at 347.  The Court stated:

> If there is probable cause to believe a vehicle contains evidence of criminal activity, <u>United States v. Ross</u>, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found.

<u>Id.</u>  <u>Gant</u> reiterated and affirmed <u>Ross</u>'s holding: "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  <u>United States v. Ross</u>, 456 U.S. 798, 825 (1982).

Several courts have held that the search incident to arrest exception includes searching the contents of an arrestee's cell phone, including any text messages, pictures and stored phone numbers.  <u>United States v. Flores-Lopez</u>, 670 F.3d 803 (7th Cir. 2012);

9

United States v. Curtis, 635 F.3d 704, 712 (5th Cir. 2011); United States v. Pineda-Areola, 372 Fed. Appx. 661, 663 (7th Cir. 2010)(unpublished); United States v. Fuentes, 368 Fed. Appx. 95, 98-99 (11th Cir. 2010)(unpublished); United States v. Murphy, 552 F.3d 405, 411 (4th Cir. 2009); Silvan W. v. Briggs, 309 Fed. Appx. 216, 225 (10th Cir. 2009)(unpublished); United States v. Finley, 477 F.3d 250, 254 (5th Cir. 2007).  Even though a cell phone can hold much more information than a wallet or a diary, it is still a container.  New York v. Belton, 453 U.S. 454, 460 n.4 (1981) (a container is "any object capable of holding another object."); Flores-Lopez, 670 F.3d at 805 (citing cases). Courts have consistently refused to distinguish between "worthy" and "unworthy" containers for purposes of Fourth Amendment protection based upon size or storage capacity.  California v. Acevedo, 500 U.S. 565, 576 (1991) (discussing closed containers found in cars); California v. Carney, 471 U.S. 386, 391-94 (1985) (discussing mobile homes); United States v. Arnold, 533 F.3d 1003, 1009 (9th Cir. 2008) (discussing laptop computers).

In the instant case, Lustig was arrested for solicitation of prostitution.  A search of his vehicle including all containers in the vehicle for evidence of his crime of arrest was lawful.  It was reasonable for deputies to search the vehicle for any evidence related to solicitation of prostitution especially where (1) Lustig had car keys on him but denied driving to the hotel, (2) look for additional phones that may have been used given that he had two phones on his person which contained relevant evidence related to the instant offense, (3) locate any evidence that might be destroyed, and (4) remove the vehicle from the hotel parking lot and conduct an inventory search to ensure that the vehicle would not be damaged or destroyed.

### b.  The Data in the Phones Could Have Been Lost or Destroyed

Courts have routinely recognized that information that has a potential to be destroyed can justify a warrantless search.  United States v. Brooks, 367 F.3d 1128, 1135

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*

*13-CR-3921-BEN*

(9th Cir. 2004) (discussion re: exigent circumstances related to destruction of evidence); United States v. Flores-Lopez, 670 F.3d 803 (7th Cir. 2012) (search of cell phone incident to arrest proper); United States v. Murphy, 552 F.3d 405, 411-12 (4th Cir. 2009) (same); United States v. Young, 278 Fed. Appx. 242, 245-6 (4th Cir. 2008) (unpublished) (to prevent text messages from being automatically deleted, officers were permitted to search phone incident to arrest); United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007) (search of cell phone incident to arrest to prevent destruction of evidence was proper); United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996) (law enforcement may immediately search or retrieve incident to arrest information from a pager in order to prevent destruction of evidence).

Several courts have discussed the exigent nature of data in relation to the warrantless searches of cell phones. Most recently in United States v. Flores-Lopez, the Seventh Circuit analyzed the exigent nature of cell phones and pagers. Flores-Lopez, 670 F.3d at 807-9. The Court there held:

> What we said in Ortiz about pagers is broadly applicable to cell phones: "The contents of some pagers also can be destroyed merely by turning off the power or touching a button." [citations omitted.] Thus, it is imperative that enforcement officers have the authority to immediately "search" or retrieve, incident to a valid arrest, information from a pager in order to prevent its destruction as evidence.

Id. at 809. The Seventh Circuit also rejected defendant's argument that law enforcement should know how to preserve data on different types of devices by using a "Faraday bag", or shutting off the power, for example. Id. at 808-09.

Likewise, in United States v. Gordon, 2012 U.S. Dist. LEXIS 128256 (D.Hawaii 2012), the district court found that a warrantless search of a cell phone was reasonable because "of the nature of a cellular telephone a search [is justified] under Chimel's preservation of evidence factor." Gordon, 2012 U.S. Dist. Lexis at *36 (citing Murphy, 552 F.3d at 411). The district court in United States v. Davis, 787 F. Supp. 2d at 1171-2,

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                      *13-CR-3921-BEN*

1  also noted the volatile nature of electronic data even though it found that officers

2  conducted an unlawful search of a cell phone.

3       Here, the warrantless search of Lustig's cell phones by Sheriff's Deputies was

4  reasonable.  It is undisputed that Lustig used a phone to facilitate the commission of the

5  state offense which he was arrested.  It is undisputed that he had two phones on his

6  person which contained such related information. It is reasonable for Sheriff's Deputies

7  to search through the phones due to the volatile nature of certain cell phone information

8  with the passing of time.

### c. The Two Cell Phones Located in the Vehicle were Searched with a Subsequent Search Warrant

9
10

11       Should the Court find that the warrantless search of the two cell phones found

12  in the car to be unlawful, the Court should nonetheless find the data found as a result

13  of a subsequent search warrant.  It is undisputed that the FBI obtained a search

14  warrant for the two phones found in the vehicle.  That warrant is attached to Lustig's

15  motion to suppress at ECF Docket 25-4.  Lustig makes no challenge to the lawfulness

16  of the subsequent warrant in his motions.

### 3. Lustig's Car was Lawfully Searched Under the Inventory Exception to the Warrant Requirement

17
18

19       Deputies lawfully impounded Lustig's car based upon (1) his arrest related to

20  prostitution and (2) a concern that the vehicle would be stolen or damaged.  This

21  exception to the warrant requirement is well-established.  <u>Miranda v. City of Cornelius</u>,

22  429 F.3d 858, 863-4 (9th Cir. 2005).  Lustig argues that the deputies were not acting

23  reasonably and should not have impounded the car.  He cites to <u>United States v.</u>

24  <u>Cervantes</u>, 678 F.3d 798 (9th Cir. 2012) in support.  His reliance on <u>Cervantes</u> is

25  misplaced because deputies were acting reasonably in impounding the vehicle.

26
27
28

Cervantes concerned whether there was probable cause to stop the vehicle Cervantes was driving, and later conduct an inventory search of the vehicle. The Ninth Circuit held that (1) conclusory allegations concerning whether the location Cervantes left was a stash house was improper, and (2) Cervantes failure to take a direct route did not increase probable cause to stop the vehicle. Cervantes, 678 F.3d at 804.

Here, Lustig was arrested for a state offense, thus there was probable cause to believe he committed a crime. Although he had car keys in his pocket, he denied driving a vehicle to the location. Lustig was taken to jail for his offense. Unlike the situation in Cervantes where the Court found no reason to impound the vehicle, here, deputies acted reasonably in impounding the vehicle to prevent it from being vandalized or stolen after Lustig's arrest. Cervantes, 678 F.3d at 805 (inventory search proper if vehicle was "…vulnerable to vandalism or theft.")

> The Ninth Circuit noted in Cervantes:
> According to California Vehicle Code § 22651(h)(1), an officer may impound and remove a vehicle "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." Cal. Vehicle Code § 22651(h)(1).

Unlike in Cervantes, here, Lustig was arrested, deputies found the car keys and the phones on his person, and the vehicle was impounded in compliance with Cal. Vehicle Code §22651(h). The inventory search of Lustig's was proper and the evidence should not be suppressed.

## 4. The Evidence Would Have Been Discovered Under the Inevitable Discovery Doctrine

Should the Court find that the evidence was not lawfully seized and searched incident to arrest, the evidence would have been inevitably discovered vis-a-vis a search warrant. If the government can establish by a preponderance of evidence that the unlawfully obtained information would have been inevitably discovered by lawful means,

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                    *13-CR-3921-BEN*

then the evidence should not be suppressed.  <u>Nix v. Williams</u>, 467 U.S. 431, 444 (1984); <u>United States v. Lang</u>, 149 F.3d 1044, 1047 (9th Cir. 1998).  A court must determine whether the information obtained would have been discovered using lawful means.  <u>Id.</u>  It is not based upon speculation but "focuses on demonstrated historical facts capably of ready verification or impeachment."  <u>Id.</u>  At least one court has held that this doctrine is applicable to searches of cell phones.  <u>United States v. Morales-Ortiz</u>, 376 F.Supp.2d 1131, 1143 (D. N.M. 2004).

In this case, once the phones in his pocket were seized as an instrumentality of the initially discovered prostitution crime and his car was impounded, a search warrant of the phones for other related evidence would have revealed the presence of the information on the phones.  It is highly likely that a court would have approved a search warrant for the phone based upon (1) Lustig's arrest for a prostitution offense, (2) his lie about owning a car despite having car keys on his person and (3) a phone was used in the commission of the state prostitution offense (he called the online ad).  For the above reasons, should this Court determine that the phones were unlawfully searched incident to arrest, the Court should not suppress the evidence obtained based upon the fact that the text messages and phone logs would have been found under the inevitable discovery doctrine.

## 5. Good Faith

Should this Court conclude that search incident to an arrest and inevitable discovery doctrines do not apply, suppression is not appropriate under <u>Herring v. United States</u>, 555 U.S. 135 (2009) - a seminal authority on the exclusionary rule.  The officers here acted in good faith when searching the phone incident to arrest.  Their acts were not done through "reckless or deliberate" officer misconduct.  <u>Herring v. United States</u>, 555 U.S. 135, 140 (2009).

In <u>Herring</u>, the Supreme Court issued several holdings putting an end to the reflexive recourse to suppression as the remedy for Fourth Amendment violations. First,

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                    *13-CR-3921-BEN*

Herring held that the exclusionary rule is not automatic for all such violations.  Id. at 140 ("The fact that a Fourth Amendment violation occurred - i.e., that a search or arrest was unreasonable - does not necessarily mean that the exclusionary rule applies.").  Second, Herring clarified that "the exclusionary rule is not an individual right and only applies only where it result[s] in appreciable deterrence."  Id. at 141 (citation and internal quotations omitted).  Finally - and most important, for present purposes - Herring held that, insofar as "deterrence . . . varies with the culpability of law enforcement conduct," Id. at 143, the exclusionary rule should not apply to isolated acts of police negligence.  Instead,

> [t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.  As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

Id. at 144 (emphasis added).  Herring held as much, in large part, because the exclusionary rule's "costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application."  Id. at 141 (citation and internal quotations omitted).

So, Herring clearly stands for the principle that simple police negligence is not enough to warrant suppression.  Indeed, the Supreme Court reaffirmed as much in 2011.  See Davis v. United States, 131 S. Ct. 2419, 2428 (2011) ("[I]solated,' 'nonrecurring' police negligence . . . lacks the culpability required to justify the harsh sanction of exclusion.") (quoting Herring, 555 U.S. at 137).  See also id. at 144 ("the extreme sanction of exclusion" is inapplicable unless it "serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances systemic negligence.")  (quoting United States v. Leon, 468 U.S. 897, 916 (1984)).  The Supreme Court reiterated the basic premise that in every case where the exclusionary rule is applied, "the benefits of

*United States' Response in Opposition to Defendants' Motion to Suppress Evidence*                    *13-CR-3921-BEN*

deterrence must outweigh the costs." <u>Id.</u>  The Supreme Court also stated that in order "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." <u>Id.</u> at 702.

Here, there are no allegations that Sheriff's Deputies acted "deliberate, reckless, or grossly negligent conduct, or in some circumstances systemic negligence" to warrant suppression.  Should the Court not be persuaded by any of the previous arguments, the Court must find that deputies acted in good faith and not suppress the evidence.

## B. <u>§1591 is Constitutional</u>

### 1. As Applied, the Statute is Constitutional

Defendant asserts an "as applied" challenge to the Indictment which charges him with two counts of 18 U.S.C. §1591, sex trafficking of a minor.  He takes issue with Section 1591(c), which states in relevant part "in a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited..., the Government need not prove that the defendant knew that the person had not attained the age of 18 years."  18 U.S.C. §1591(c).  Defendant argues that because this provision is not specifically defined, it should found unconstitutional.  For the following reasons set forth below, the Court should deny Defendant's motion.

First, the crime that Defendant is charged with, that is to knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person to engage in a commercial sex act (prostitution), is illegal under federal law regardless of that person's age.  In other words, putting aside that the females in this case were minors during the relevant time frame, even if they were adult, Defendant's conduct of engaging in commercial sex or any type of sexual contact is illegal in California (as well as most states) and under federal law.  <u>See</u> 18 U.S.C. §§ 1591, 2421, 2423; California Penal Code §§ 236.1, 266, 288, et seq.  The fact the persons being obtained for commercial sex acts

in this case were minors, merely increases the penalties for the offense.  See e.g. United States v. Todd, 627 F.3d 329, 334 (9th Cir. 2010).

The Government is still required to prove the elements of the offense under §1591, namely that (1) the defendant's actions were in or affecting interstate or foreign commerce; (2) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained a person and caused that person to engage in a commercial sex act; (3) that person was under the age of 18 years; and (4) the defendant either knew that the person had not reached 18 years of age, or defendant recklessly disregarded the person's age and had a reasonable opportunity to observe the person.  18 U.S.C. §1591; United States v. Brooks, 610 F.3d 1186, 1195.

The provision in §1591(c) is similar to well established law for a related offense, transporting persons across state lines for prostitution under 18 U.S.C. §2421 and §2423. The conduct of transporting individuals across state lines for prostitution is illegal regardless of the age of the person being trafficked.  The age of the trafficked person only increases the penalties.  United States v. Brooks, 610 F.3d at 1195(discussion of §2423 regarding knowledge of age)3; United States v. Taylor, 239 F.3d 994, 997 (9th Cir. 2001)("ignorance of the victim's age provides no safe harbor ..."); 18 U.S.C. §§ 2421; 2423.

The Second Circuit recently addressed this precise issue in United States v. Robinson, 702 F.3d 22 (2nd Cir. 2012).  The Court held that the United States could prevail if it could be shown that a defendant knew, was in reckless disregard of the person's age or had a reasonable opportunity to observe the person.  Robinson, at 32. The Court held "Because §1591(a) requires proof of knowledge or reckless disregard – not both – the government may satisfy its burden by proving knowledge *or the substitute for knowledge under §1591(c).*  Accordingly, §1591(c) supplies an *alternative* to proving any mens rea with regard to the defendant's awareness of the victim's age." Id. [emphasis in original.]

In addition, at least one district court has considered and rejected Defendant's arguments. In <u>United States v. Wilson</u>, 2010 U.S. Dist. LEXIS 75149 (S.D. Fl. 2010), the court rejected a similar challenge raised by a similarly situated defendant charged with §1591. The court noted that the Government was still required to prove the elements of the offense (listed above). It further held that the provision contained in §1591(c) did not change the burden of proof nor did it transform §1591 into a "strict liability" offense. <u>Wilson</u>, 2010 U.S. Dist. LEXIS at *17-18.

For the above reasons, the court should not dismiss the Indictment nor should it strike any language from the Indictment that is contained within the statute, specifically §1591(c).

### 2. There is No Due Process Violation

The next argument Defendant makes is related to the first argument. He argues that §1591(c) "alleviates" the Government's burden of proof as to age. As set forth below, this is incorrect and the court should deny the motion.

As with the above argument, the Government is aware of one appellate court and one district court case (both cited above) that considered Defendant's argument and rejected it. <u>United States v. Robinson</u>, 702 F.3d 22 (2nd Cir. 2012); <u>United States v. Wilson</u>, 2010 U.S. Dist. LEXIS at *19. In this case, the Government will have to prove that the females the Defendant transported and obtained for prostitution were under 18 years (under 14 years for the higher mandatory minimum) of age among all of the other elements of the offense. Section 1591(c) does not place any burden of proof on a defendant charged under Section 1591(a). Rather, section 1591(c) simply replaces the government's obligation to prove one fact - the defendant's knowledge of a victim's age in prosecutions under §1591(a) involving minor victims - with an obligation to prove another fact - that the defendant had a reasonable opportunity to observe the victim. In addition, section 1591(c) does not prevent Defendant from presenting other defenses if he so chooses.

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                    *13-CR-3921-BEN*

Courts have long recognized that statutes prohibiting sex crimes against minors regardless of whether a defendant knew the victim was a minor are an exception to the general common law rule that criminal statutes must include a mens rea element.  See United States v. X-Citement Video, Inc., 513 U.S. 64, 72 n.2 (1994); Morisette v. United States, 342 U.S. 246, 251 n. 8 (1952); United States v. United States Dist. Court, 858 F.2d 534, 543-4 (9th Cir. 1988) (holding that it is the Defendant's burden by clear and convincing evidence of mistake of age in a prosecution under §2251).   These cases discuss that where in certain sex offense cases where the defendant personally interacts with a victim - as in this case - he may be reasonably required to ascertain that person's age.  See X-Citement Video, Inc., 513 U.S. at 72 n.2.

## C. **The Yahoo! Warrant and the Subsequent Cell Phone Search Warrants Should Not Be Suppressed**

Lustig claims that the Court should suppress the results of the email search warrant related to boband619@yahoo.com because (1) it did not comply with the standards set forth by the Ninth Circuit; and (2) the warrant was impermissibly overbroad.   Lustig is mistaken on both assertions.

### a. **The Yahoo! Search Warrant Did Not Need to Include Suggestions Made in the Concurrence of a Ninth Circuit Decision**

Lustig contends that the Yahoo! search warrant for boband619@yahoo.com was issued in violation of the Fourth Amendment because it did not comply with the Ninth Circuit's guidelines in United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162 (9th Cir. 2010) (en banc) ("CDT III").  Def. Mot. 19-24.  And because it was overly broad.  As mentioned above, he is mistaken.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. This provision is known as a warrant's "specificity" requirement and the courts analyze specificity through "two

19

aspects": particularity and breadth.  <u>United States v. SDI Future Health, Inc.</u>, 568 F.3d 684, 702 (9th Cir. 2009).

Determinations of whether a warrant is over broad consider: (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available at the time the warrant issued.  <u>United States v. Shi</u>, 525 F.3d 709, 731-32 (9th Cir. 2008) (citing <u>United States v. Noushfar</u>, 78 F.3d 1442, 1447 (9th Cir. 1996)).  Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances." <u>United States v. Diaz</u>, 491 F.3d 1074, 1078 (9th Cir. 2007) (internal quotation omitted).

In this section of his motion, Lustig first challenges the lack of a specific search methodology.  In support of his contention, Lustig relies heavily upon the search protocol advanced in Judge Kozinksi's concurrence in <u>CDT III</u>, 621 F.3d at 1162. Lustig's reliance on Judge Kozinski's concurrence is misplaced.

<u>CDT III</u> was the last ruling in a series of cases.  The search protocol that Lustig desires was originally laid out in the *preceding* case. <u>See</u> <u>United States v. Comprehensive Drug Testing, Inc.</u>, 579 F.3d 989 (9th Cir. 2009) (en banc) ("<u>CDT II</u>").  The important distinction between <u>CDT II</u> and <u>CDT III</u> is that the amended opinion moved the search protocol from the majority opinion to the concurring opinion.  Thus, the search protocol is not a constitutional requirement.  Instead, it is now considered "guidance."  <u>CDT III</u>, 621 F.3d at 1178.

The Ninth Circuit recently affirmed its holding that the <u>CDT III</u> search protocols are not required and are merely guidance.  <u>United States v. Schesso</u>, 730 F.3d 1040, 1049 (9th Cir. 2013).  The actual standard to be applied is not a "clear-cut

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                    *13-CR-3921-BEN*

rule." Id.  Instead, district court and magistrate judges must exercise their independent judgment in every case as to what search will be deemed reasonable and lawful.  Id. The real concern in CDT III and its predecessor United States v. Tamura, 694 F.2d 591 (9th Cir.1982) was to prevent the government from "overseizing data and then using the process of identifying and segregating seizable electronic data 'to bring constitutionally protected data into ... plain view.'" Schesso, 730 F.3d at 1047; quoting CDT III, 621 F.3d at 1171.

CDT III and Tamura are very different cases than Lustig's.  In both, the government searched a third party and seized voluminous records that were undisputedly outside the custody and control of a defendant or target.  CDT III, 621 F.3d at 1169.  Only the CDT III search results were subject to suppression, however. Id.  Explaining the different outcomes, the Ninth Circuit cited a critical distinction between the two searches:  In Tamura, the third-party being searched, Tamura's employer, refused to help the government segregate Tamura's records from those of its other employees.

In CDT III, the government "[b]rush[ed] aside an offer from on-site CDT personnel to provide all information pertaining to the ten identified [targets]." Id. This distinction informed CDT III's holding: "Tamura has provided a workable framework for almost three decades, and might well have sufficed in this case had its teachings been followed.  We have updated Tamura to apply to the daunting realities of electronic searches." Id. at 1177.

The searches of Lustig's email account were faithful to CDT III and Tamura. Other Courts in this district have recently upheld similarly broad warrants. United States v. Nazemzadeh, 2013 WL 544054 (S.D. Cal. 2013) (seizing entire contents of email account permissible if authorized by warrant).  As such, the results should not be suppressed.

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*

*13-CR-3921-BEN*

It is also worth noting, as it was in <u>Schesso</u>, that Lustig has failed to allege or establish that the search somehow involved an over-seizure of data that could expose information about other individuals not implicated in criminal activity.  Nor has there been any allegation that the search exposed sensitive information about Lustig beyond his interest in commercial sex using the Internet.

Accordingly, Lustig simply cannot establish that the protocols were overbroad and that the warrants in this case were somehow constitutionally deficient.

Moreover, even if Lustig could demonstrate impermissible over breadth, and he has not, his motion to suppress the email seized from the email account searched still fails for two reasons.  First, the agents obtained a warrant and acted in good faith. Evidence seized pursuant to a facially-valid search warrant that is later deemed invalid is nevertheless admissible if the agents conducting the search acted in good faith and in reasonable reliance on the warrant.  <u>Schesso</u>, 730 F.3d at 1050-1051 (where the court applied the good faith exception even where law enforcement appeared to have sought a warrant from a state court judge instead of a federal magistrate to specifically avoid the search protocols from <u>CDT II</u>); citing <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984) ("[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").  There is no evidence that the executing agents acted in bad faith; the warrant was issued by a proper authority; and there is no evidence that the issuing magistrate abandoned a neutral judicial role.  <u>See id.</u>  The affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Id.</u>, at 923; <u>see also</u> <u>United States v. Schultz</u>, 14 F.3d 1093, 1098 (9th Cir. 1994).  Thus, the good faith exception would apply.

Second, the doctrine of severance militates against complete suppression. Under this doctrine, the reviewing court strikes only the invalid portions of the

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                    *13-CR-3921-BEN*

warrant and suppresses only those articles seized pursuant to the invalid portions. United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984).   "When officers violate the terms of a warrant in execution, partial suppression is the norm unless the officers engaged in a general search."   United States v. Sears, 411 F.3d 1124, 1131 (9th Cir. 2005).

As such, the motion should be denied.

### b.  The Cell Phone Search Warrant is Valid

Lustig's motion must fail for the above reasons.   More importantly, and in addition, none of the CDT decisions concerned evidence found on cell phones.  Thus, his argument that officers violated the terms of CDT are without merit as CDT has no bearing on cell phone data.

## D. Administrative Subpoenas to Craigslist Did Not Violate Electronic Communications Protection Act or the Constitution

Lastly, Lustig claims that the subpoenas sent to Craigslist were invalid for three reasons: (1) because they violated the Electronic Communications Protection Act ("ECPA") by obtaining "electronic communications" without a warrant or notice; (2) because they constituted a Fourth Amendment violation; and (3) because they improperly included "extra-judicial" instruction to keep the subpoenas secret.  Def. Mot. at 24-25.  As will be discussed below, Lustig is mistaken on all accounts.

### 1.  The Government Did Not Violate ECPA

Section 2703 explains that a governmental entity may compel a provider of electronic communication services to disclose the name, address, and other identifying information of a customer.  18 U.S.C. § 2703(c)(2).  When utilizing this subpoena authority, law enforcement agencies are precluded from obtaining the content of a communication.  18 U.S.C. § 2510(8).

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                                                         *13-CR-3921-BEN*

Without any legal authority upon which to rely, Lustig claims that the Craigslist Postings are effectively content of a communication "squarely" fit within the definition of "electronic or wire communications" and are precluded by ECPA. Def. Mot. at 26. The United States disagrees that such a categorization is so obvious.

A Craigslist Posting is effectively the creation of an advertisement on the internet, without a defined recipient. Because it lacks a point of reception (unlike a telephone call, text message, or email) it cannot be said that the body of the advertisement is the content of a communication. See 18 U.S.C. §§ 2510(1)(requiring a "point of reception"). And thus, when Craigslist provided the Postings, it did not violate ECPA.

To emphasize the point, the United States agrees that any communication that occurred in *response* to the ad would qualify. That is true because it would seem that Individual A (point of origin) sent a communication to Individual B (point of reception). As such, the content of the communication becomes off-limits via subpoena. However, such communications did NOT occur in the instant case.

In sum, the subpoena that Agent Croft simply asked for – and Craigslist responded to – postings that were publically available to anyone with an Internet connect who logged on to Craigslist. But even if the Court were to determine that: that (1) the Postings were the content of a communication and should not have been shared, and (2) that law enforcement should have known that the Postings were content and should not have been received, suppression is not the remedy. See 18 U.S.C. § 2708; see, e.g., United States v. Perrine, 518 F.3d 1196, 1202 (10th Cir. 2008) ("[V]iolations of the ECPA do not warrant exclusion of evidence.").

Accordingly, his motion should be denied.

*United States' Response in Opposition to Defendants' Motion to Suppress Evidence*     *13-CR-3921-BEN*

### 2. The Fourth Amendment Was Not Violated

In addition to an ECPA violation, Lustig claims that the subpoenas sent to Craigslist constituted a violation of the Fourth Amendment. Def. Mot. at 29. Lustig is mistaken. As a preliminary matter, the chain of investigation that led law enforcement to Lustig's email address and Craigslist postings involved a witness who gave Lustig's email address and told officers she responded to an ad on Craigslist that he posted requesting a "Sugar Daddy" type relationship. See ECF Docket #25-3 at 11 (affidavit of Yahoo! Search Warrant).

A Fourth Amendment search "occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001). The Supreme Court held in Smith v. Maryland, 442 U.S. 735 (1979), that the use of a pen register (a device that records numbers dialed from a phone line) does not constitute a search for Fourth Amendment purposes. Id. at 745–46. In Smith, the Court reasoned that people do not have a subjective expectation of privacy in numbers that they dial because they "realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed." Id. at 742.

They further reasoned that "even if there were such a subjective expectation, it would not be one that society is prepared to recognize as reasonable because 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" United States v. Forrester, 512 F.3d 500, 509 (9th Cir. 2008); quoting Smith, 442 U.S. at 743–44. As such, the use of a pen register is not a Fourth Amendment search. Forrester, 512 F.3d at 509.

Returning to the instant case, when an individual posts an ad on Craigslist they certainly realize that they do not have an expectation of privacy in the content of the ad itself. This is true because the individual posting the ad realizes that they are

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*

*13-CR-3921-BEN*

empowering Craigslist (a third party) to take the information and make it accessible to the entire world, via the internet.  After all, it was Craigslist's ability to expose the content of the ad (by sharing it with others) that the posting-individual specifically sought in the first place.

Moreover, even if Lustig claims he had a subjective expectation of privacy in his Craigslist postings, the claim still fails.  Society is not prepared to recognize an expectation of privacy in Craigslist postings. A person simply has no legitimate expectation of privacy in information he voluntarily turned over to a third party with the intent of having them share that information to anyone with an internet accessible device.  <u>Forrester</u>, 512 F.3d at 509.

Finally, even if the Court were to somehow find that a Fourth Amendment violation occurred, Deputy Crysler's reliance on the subpoena returns was objectively reasonable and the "good faith" exception to the exclusionary rule applies.  <u>United States v. Schesso</u>, 730 F.3d 1040 (9th Cir. 2013); citing <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984) ("[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").

As such, Lustig's motion to suppress should be denied.

//
//
//
//
//
//
//
//

26

# IV

## CONCLUSION

For the above stated reasons, the United States respectfully requests that Defendant's motions be denied.

DATED: January 10, 2014                    Respectfully submitted,

                                           LAURA E. DUFFY
                                           United States Attorney

                                           /s/Alessandra P. Serano
                                           ALESSANDRA P. SERANO
                                           Assistant United States Attorney

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*                                    *13-CR-3921-BEN*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13-CR-3921-BEN |
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| MICHAEL LUSTIG, | |
| Defendant | |

IT IS HEREBY CERTIFIED THAT:

I, Alessandra P. Serano, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS to SUPPRESS EVIDENCE, et al, together with memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Timothy Scott, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2014.

s/Alessandra P. Serano
ALESSANDRA P. SERANO

*United States' Response in Opposition to Defendants'*
*Motion to Suppress Evidence*

28

*13-CR-3921-BEN*