1
2
3
4
5
6
7
8
9
10
11
12
13

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 13cr3921-BEN |
| Plaintiff, | |
| vs. | ORDER DENYING MOTIONS TO SUPPRESS AND MOTION TO DISMISS |
| MICHAEL LUSTIG, | |
| Defendant. | [Dkt No. 25] |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Now before the Court are Defendant's motions filed Dec. 31, 2013. Argument was heard on January 21, and February 18, 2014. The government filed a supplemental brief on January 31, 2014. Defendant filed supplemental briefs on February 18, February 19, February 26, and March 11, 2014. Defendant's motion to suppress cell phone evidence is denied. Defendant's motion to dismiss the indictment is denied. Defendant's motion to suppress Yahoo.com email evidence is denied. Defendant's motion to suppress Craigslist.com evidence is denied.

## I. CELL PHONE EVIDENCE

In June 2012, Lustig was arrested by San Diego County Sheriff deputies at a hotel for soliciting prostitution. At the time of his arrest, Lustig had cell phones in

his pockets ("the pocket phones") and in the armrest of his car ("the car phones"). During the arrest, deputies found two cell phones in his pockets and car keys. One phone was an Apple iPhone; one was a Kyocera flip phone. Having found the pocket phones, deputies then searched the contents of the phones. Lustig moves to suppress any evidence discovered during the search of the phones found in his pockets. With the car keys from Lustig's pockets, deputies also located, searched, and impounded his car. Five additional phones were found in the car and their contents searched. Lustig also moves to suppress any evidence discovered during the search of the phones found in his car.

As set forth below, the Court finds that two cell phones were lawfully seized from Lustig's pockets incident to his arrest. Courts are divided over the extent to which cell phones are subject to content searching. This Court finds that where the crime of arrest is a misdemeanor, in view of the privacy interests at stake, the deputies were constitutionally permitted to see only that which was already in plain view on the phones. However, since the California Supreme Court had decided that searching the content of a cell phone incident to an arrest is lawful, the good faith exception to the exclusionary rule applies here and the motion to suppress evidence is denied.

The Court further finds that as to the cell phones found in Lustig's car, the search does not qualify as a search incident to an arrest. The deputies were entitled to impound and inventory the car in carrying out their community caretaking function, but the government has not carried its burden of showing that the content search of the phones was in accordance with department policy on impounds and inventories. Thus, the search of the car phones for content required a warrant. However, the evidence is not to be suppressed because the inevitable discovery doctrine applies. That doctrine applies because the government eventually obtained a federal search warrant for the content of the car phones through the use of an untainted warrant application.

## A.  Phone Searches Incident to Arrest

It is well-settled that a police officer may perform a warrantless search of a person incident to a lawful custodial arrest.  *See United States v. Robinson,* 414 U.S. 218, 235 (1973).  The justification for a search incident to arrest is not confined to "the need to disarm the suspect in order to take him into custody," but also extends to "the need to preserve evidence on his person for later use at trial."  *Robinson,* 414 U.S. at 234.  For purposes of his present motion, Lustig does not challenge the legality of his arrest, nor does he deny that the arresting deputies had the authority to conduct a warrantless search incident to this arrest.[1]  Rather, he contends that the seizure and subsequent search of his cell phones violated the Constitution because at the time of his arrest, it would not have been immediately apparent to the arresting officers that the cell phone would contain incriminating evidence subject to seizure and that he had a reasonable expectation of privacy in the contents of the phones.

There is no controlling precedent in the Ninth Circuit directly addressing the legality of cell phone searches under these facts.  In fact, it is an unsettled question among courts nationally.[2]  Illustrating the divide among both federal and state courts, on January 16, 2014, the United States Supreme Court granted *certiorari* in two cases.  In *Riley v. California*, No. 13-132, a California Court of Appeal permitted a warrantless search of a cell phone incident to arrest in San Diego County.  That decision was based upon the California Supreme Court's watershed decision in *People v. Diaz*, 51 Cal. 4th 84 (2011), permitting officers to conduct a delayed search of the contents of an arrestee's cell phone without a warrant as an exception to the Fourth Amendment.  In *United States v. Wurie*, No. 13-212, the United States Court of Appeals for the First Circuit went the opposite way and

---

[1]The motion does not claim the arrest was unlawful.  During the hearing, defense counsel suggested he wanted to research the question and would file a brief to contest the arrest.  To date, no briefing has been filed.

[2]*See e.g.*, K. Quinn and M. Allen, *Incident to Arrest*, Los Angeles Lawyer Magazine (June 2013), at 21 (presciently calling for the U.S. Supreme Court to address the issue).

1   suppressed evidence from a warrantless cell phone search incident to arrest.

2         There is no controlling precedent in this circuit.  The parties proceed by

3   analogy arguing the propriety of an arresting officer's authority to seize a cell phone

4   and conduct a warrantless search of its contents incident to a lawful arrest.

5         **1.  Decisions Approving Phone Searches Incident to Arrest**

6         A number of cases have been decided approving the warrantless search of a

7   cell phone seized during a lawful arrest.  *See, e.g., United States v. Johnson,* 515

8   Fed. App'x 183, 187 (3d Cir. Mar. 19, 2013) (rejecting the defendant's claim that he

9   was arrested without probable cause, and then concluding that the defendant's cell

10  phone was legally seized during a search incident to this lawful arrest); *United States*

11  *v. Murphy,* 552 F.3d 405, 411 (4th Cir. 2009), *cert. denied*, 129 S. Ct. 2016 (2009)

12  (finding it "unworkable and unreasonable" to require a police officer to ascertain the

13  likelihood of imminent loss of cell phone data before conducting a warrantless

14  search of the phone's contents and that the lawfulness of the search was not

15  undermined by delay between initial search and later search at station); *United States*

16  *v. Finley,* 477 F.3d 250, 259–60 & n. 7 (5th Cir. 2007), *cert. denied*, 127 S. Ct. 2065

17  (2007) (approving the retrieval of call records and text messages from the

18  defendant's cell phone incident to his arrest, and finding that the "incident to arrest"

19  basis for this ruling was unaffected by the fact that the police transported the

20  defendant a short distance before conducting this search); *United States v.*

21  *Flores–Lopez*, 670 F.3d 803, 810 (7th Cir. 2012) (upholding a search of a cell phone

22  incident to an arrest for the limited purpose of obtaining the cell phone number,

23  which in turn was used to subpoena call history records from the telephone

24  company); *Silvan W. v. Briggs,* 309 Fed. App'x 216, 225 (10th Cir. Jan. 23, 2009)

25  (holding that "the permissible scope of a search incident to arrest includes the

26  contents of a cell phone found on the arrestee's person"); *United States v. Fuentes,*

27  368 Fed. App'x 95, 98–99 (11th Cir. Mar. 3, 2010) (affirming the denial of a motion

28  to suppress evidence discovered on the defendant's cell phone, where probable cause

existed for the defendant's arrest, and where the cell phone was "seized in a proper search incident to" this arrest); *United States v. Gholston,* __ F. Supp. 2d __, 2014 WL 279609 *10 (E.D. Mich. Jan. 27, 2014) (discussing split of authority and denying motion to suppress phone evidence from phone searched at arrest where warrant was obtained subsequently); *United States v. Martin,* No. 07CR20605-1, slip op., 2013 WL 55693, at *4–*5 (E.D. Mich. Jan. 3, 2013) (rejecting the defendant's contention that the officers who arrested him unlawfully searched the contact list on his cell phone in the course of his arrest, and recognizing the "manifest need to preserve evidence" as justification for an officer's retrieval of information from a cell phone seized incident to an arrest); *United States v. Bass,* No. 11–20704, slip op., 2012 WL 1931246, at *6 (E.D. Mich. May 29, 2012) (rejecting the defendant's challenge to the seizure of a cell phone on the ground that the phone actually was not in his possession at the time of his arrest, and concluding that because the cell phone was in defendant's hand, the arresting officers were permitted to seize it); *United States v. Hill*, No. CR10-261-JSW, 2011 WL 90130, at *7 (N.D. Cal. Jan. 10, 2011) ("[A]bsent guidance from the Supreme Court or the Ninth Circuit, the Court is unwilling to conclude that a cell-phone that is found in a defendant's clothing and on his person, as is the case here, should not be considered an element of the person's clothing.  Accordingly . . . Hill's iPhone should not be treated any differently than, for example, a wallet taken from a defendant's person.").

### 2.  Decisions Questioning Phone Searches Incident to Arrest

There are also decisions expressing reservations about broad warrantless searches of a cell phone incident to an arrest.  The First Circuit has observed, for instance, that such a rule seemingly "would give law enforcement broad latitude to search any electronic device seized from a person during his lawful arrest, including a laptop computer or a tablet device such as an iPad," and that a warrantless search of an electronic device presumably "could encompass things like text messages,

emails, or photographs." *United States v. Wurie,* 728 F.3d 1, 7 (1st Cir. 2013), *cert. granted,* 134 S. Ct. 999 (2014) (citations omitted).  Given that "individuals today store much more personal information on their cell phones than could ever fit in a wallet, address book, [or] briefcase," the court in *Wurie* expressed its concern that a warrantless search of cell phone data incident to an arrest would be akin to the writs of assistance used by "customs officers in the early colonies ... to rummage through homes and warehouses, without any showing of probable cause linked to a particular place or item sought."  *Wurie,* 728 F.3d at 9; *see also Flores–Lopez,* 670 F.3d at 805 (recognizing that "a modern cell phone is a computer," and "not just another purse or address book," so that "[t]he potential invasion of privacy in a search of a cell phone is greater than in a search of a 'container' in a conventional sense"); *United States v. Lucas,* 640 F.3d 168, 178 (6th Cir. 2011) (cautioning that "analogizing computers to other physical objects when applying Fourth Amendment law is not an exact fit because computers hold so much personal and sensitive information touching on many private aspects of life.").

Accordingly, the First Circuit held "that the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person, because the government has not convinced us that such a search is ever necessary to protect arresting officers or preserve destructible evidence."  *Wurie,* 728 F.3d at 13; *see also, United States v. Dixon,* __ F. Supp. 2d __, 2013 WL 6055396, at *4–*6 (N.D. Ga. Nov. 15, 2013) (finding federal agent's extraction of data from the defendant's cell phone, conducted in the agent's office while the defendant was being booked at a different location, could not be justified as a warrantless search incident to an arrest, where the intrusion on the defendant's privacy "involved much more than just a limited search for the phone's log history or recent calls," and where there was no "viable threat that the phone data could be remotely wiped or destroyed"); *Schlossberg v. Solesbee,* 844 F. Supp. 2d 1165, 1170-71(D. Ore. 2012) (holding that the warrantless search of an electronic device,

such as the digital camera at issue in that case, is "not reasonable incident to a valid arrest absent a showing that the search was necessary to prevent the destruction of evidence, to ensure officer safety, or that other exigent circumstances exist" (footnote omitted)); *United States v. Quintana,* 594 F. Supp. 2d 1291, 1300 (M.D. Fla. 2009) (suppressing the evidence found in a warrantless search of a digital photo album on the defendant's cell phone following his arrest for driving with a suspended license, where "[t]he search of [the contents of] [d]efendant's cell phone had nothing to do with officer safety or the preservation of evidence related to the crime of arrest").

### 3.  Cases Citing the Need to Preserve Phone Evidence

Courts have often cited the exigency exception (*i.e.*, the need to preserve evidence that could be lost or destroyed quickly) to validate searching the contents of a cell phone without a warrant. *See, e.g., Flores–Lopez,* 670 F.3d at 807–09; *Murphy,* 552 F.3d at 411; *Finley,* 477 F.3d at 260; *United States v. Young,* 278 Fed. App'x 242, 245–46 (4th Cir. May 15, 2008), *cert. denied*, 129 S. Ct. 514 (2008); *United States v. Santillan,* 571 F. Supp. 2d 1093, 1102–03 (D. Ariz. 2008).  It is an argument the government puts forth in this case, as well.

Some of these cases note that newer "smart" phones and devices can be remotely disabled or remotely data-wiped.  "[R]emote-wiping capability is available on all major cell-phone platforms; if the phone's manufacturer doesn't offer it, it can be bought from a mobile-security company.  See, e.g., 'Find My iPhone.' www.apple.com/iphone/built-in-apps/find-my-iPhone.html." *Flores-Lopez*, 670 F.3d at 808 (other citations omitted).  One of the phones Lustig carried in his pockets was an Apple iPhone and may have been equipped with the "Find My iPhone" app that allows a user to remotely lock or wipe the phone.  Requiring law enforcement officers to recognize in the field whether the arrestee is carrying a phone capable of remote wiping is problematic because it requires officers to become phone experts.  A search and seizure rule of this type would probably be

"unworkable and unreasonable."  *Cf. Murphy*, 552 F.2d at 411 (to require police officers to ascertain the storage capacity of a cell phone before conducting a search would be an unworkable and unreasonable rule).

One solution proffered is to require police to use a "Faraday bag" or a "Faraday cage" into which the device can be placed until a search warrant is obtained.  "The alternative to searching the cell phone forthwith . . . is to place it in a 'Faraday bag' or 'Faraday cage' (essentially an aluminum-foil wrap) or some equivalent, which isolates the cell phone from the phone network and from Bluetooth and wireless Internet signals."  *Flores-Lopez*, 670 F.3d at 809 (citations omitted).  *Wurie* considered this approach a workable solution.  "[I]t does not seem to be particularly difficult to prevent overwriting of calls or remote wiping of information on a cell phone today . . . . they can put the phone in a Faraday enclosure."  *Wurie*, 728 F.3d at 11.  Of course, that means the constable must carry one more piece of equipment: a supply of Faraday bags, perhaps of different sizes.  And even that may not work.  Two new phone makers recently announced cell phones specifically designed to secure their user's data from all others.[3]  One appears to be designed to self-destruct if tampered with.[4]

Consequently, preventing the swift destruction of cell phone evidence, *i.e.*, the

---

[3]The "Blackphone."  "Blackphone offers a full suite of applications giving worldwide users unprecedented control over privacy and security."   See www.blackphone.ch/press-releases/.

The "Privacy Phone."   "FreedomPop, a Los Angeles-based mobile startup, announced what it's nicknamed the 'Snowden Phone' after the notorious whistle blower.   The Privacy Phone comes with Private WiFi, a built-in commercial VPN service that encrypts all of the data coming to and from the phone by default."   C. Farivar,  *New   "Snowden   Phone,"*   http://arstechnica.com/information-technology/2014/03/new-snowden-phone-likely-not-quite-up-to-snowden-level-standards/, Mar. 5, 2014.

[4]Boeing's "Black."  "This android phone will self-destruct . . . . Any attempt to break open the casing of the device would trigger functions that would delete the data and software contained within the device and make the device inoperable."   S. Gallagher, *Update: Boeing's Black – This Android Phone Will Self-Destruct*, http://arstechnica.com/information-technology/2014/02/boeings-black-this-android-phone, Feb. 26, 2014.

exigency exception, is an interest that could conceivably swallow the search warrant rule.  With the emergence of simpler techniques to secure and encrypt the data on one's electronic device, the issue of cell phone search warrants may be short lived, regardless of the how the Supreme Court rules.  The new issue may be a Fifth Amendment question rather than a Fourth Amendment debate.  "Encryption is an altogether different beast.  In most cases involving encryption, police already possess the device containing the encrypted data; the problem is that they cannot read the data."  Hon. Brian M. Hoffstadt, *Encryption Technology Meets Fifth Amendment*, L.A. Daily Journal, at 6, Mar. 5, 2014.  Judge Hoffstadt points out that forcing an arrestee to reveal an encryption key may impinge on a defendant's right against self-incrimination.  *Id.*  In contrast to the Fourth Amendment warrant exception, "the privilege against self-incrimination has no warrant exception."  *Id.* In other words, future cell phones may automatically encrypt user data.  If police cannot decipher the contents of the phone, whether saved in a Faraday bag or not, the only solution may be to gain the encryption key from the arrestee.  To do that, prosecutors could be forced to grant the arrestee immunity.  "[T]he privilege against self-incrimination could well put encrypted data forever beyond the reach of law enforcement."  *Id.*

### 4.  Phone Evidence and the Fourth Amendment in this Case

Citizens carry in their hands, pockets, handbags, and backpacks: laptop computers, iPhones, iPads, iPods, Kindles, Nooks, Surfaces, tablets, phablets, Blackberries, flip phones, smart phones, contract phones, no-contract phones, and digital cameras.  Some even wear Google Glass.  These devices often (or perhaps usually) contain private and sensitive information, photographs, sound recordings, and GPS location history.  *See e.g., United States v. Cotterman*, 709 F.3d 952, 956-57 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 899 (2014) (analyzing searches of electronic devices during border searches).  On some devices one can even remotely view home surveillance cameras.  *Flores-Lopez*, 670 F.3d at 806 ("An iPhone

application called iCam allows you to access your home computer's webcam so that you can survey the inside of your home while you're a thousand miles away."). Others permit remote erasing of the mobile device. *Id.* at 807-08. All have digital memory sufficient to store enormous amounts of information.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search is *per se* unreasonable unless one of the few exceptions applies. *Arizona v. Gant,* 556 U.S. 332, 338 (2009). One is the search-incident-to-arrest exception.

> The modern search-incident-to-arrest doctrine emerged from *Chimel v. California,* 395 U.S. 752 (1969), in which the Supreme Court held that a warrantless search of the defendant's entire house was not justified by the fact that it occurred as part of his valid arrest. The Court found that the search-incident-to-arrest exception permits an arresting officer "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction" and to search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." The justifications underlying the exception, as articulated in *Chimel,* were protecting officer safety and ensuring the preservation of evidence.

*United States v. Wurie*, 728 F.3d at 3-4 (internal citations omitted). The government in this case relies on the search-incident-to-arrest exception to justify its warrantless search of the cell phones found in Lustig's pants pockets.

### a. Cell Phones Seized From the Person

At this point, there is no challenge to the lawfulness of Lustig's arrest. Because the arrest appears to be lawful, the law enforcement search of Lustig's person is also lawful under the search-incident-to-arrest exception. That exception permits the search of Lustig's body and clothes and the seizure of the two phones in Lustig's pockets: an Apple iPhone and a Kyocera flip phone. Having seized the two phones, the deputies proceeded to search the content of the phones.

With no binding case precedent on point, this case raises a question of first impression for this Court about the lawfulness of the content search of each phone.

The defense argues it is better to "err on the side of the Constitution" than to approve a warrantless search. The government argues correctly that Supreme Court precedent has permitted extensive warrrantless searching of objects found on the person of one lawfully arrested. The government then argues that cell phones are no different than a cigarette package found in a clothes pocket. But a cell phone is qualitatively different in several respects. This Court is of the opinion that searching an arrestee's phone, beyond what is in plain view, is an unreasonable search under the Fourth Amendment – where the crime charged is a misdemeanor.

As the Ninth Circuit noted recently, "[s]earches of electronic records pose unique challenges for 'striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures.'" *United States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013) (quoting *United States v. Comprehensive Drug Testing, Inc.* ("*CDT III*"), 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam)). *Schesso* cautions judges to be "especially cognizant of privacy risks" when authorizing a search of an electronic device because of "the risks inherent in over-seizing data." *Id. Schesso* described the "real concern animating the court in *CDT III*" as the problem of law enforcement "overseizing data and then using the process of identifying and segregating seizable electronic data 'to bring constitutionally protected data into . . . plain view.'" *Id.* at 1047 (quoting *CDT III*, 621 F. 3d at 1171).

Lustig was charged with a misdemeanor crime. A misdemeanor charge carries a more modest societal interest in law enforcement. At the same time, a cell phone owner generally has a reasonable expectation of privacy in the content of electronic information stored in his phone. *Quintana*, 594 F. Supp. 2d at 1299 (citing *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 905 (9th Cir. 2008), *rev'd on other grounds*, *City of Ontario, California v. Quon*, 130 S. Ct 2619 (2010)). Some courts have further observed that a cell phone is similar in some respects to a diary or address book, and that the police are permitted to "leaf through" such items

incident to an arrest to determine whether they "contain[ ] information relevant to the crime for which [the suspect] has been arrested." *Flores–Lopez,* 670 F.3d at 807; *see also United States v. Meriwether,* 917 F.2d 955, 958 (6th Cir. 1990) (determining that the seizure and activation of a pager was akin to the examination of a "personal telephone book believed to contain the numbers of suppliers or customers"); *United States v. Gomez,* 807 F. Supp. 2d 1134, 1146 (S.D. Fla. 2011) (drawing a comparison between "highly personal items like wallets or purses" and "an electronic storage device like a cell phone (especially its call log history)"). The Ninth Circuit has observed, "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable." *United States v. Hoang*, 486 F.3d 1156, 1159 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 1064 (2008) (quoting *United States v. Jacobsen*, 466 U.S. 109, 114 (1984)).

Because of the modest social interest in prosecuting misdemeanors, and the need to be cognizant of the large risks to privacy from over-seizing cell phone information, a limited "plain view" rule provides a bright line for police and strikes the right balance. *See e.g., Flores-Lopez*, 670 F.3d at 810 (approving very limited warrantless search of phone in order to discover the phone's own phone number); *but see Murphy*, 552 F.3d at 412 ("Of course, once the cell phone was held for evidence, other officers and investigators were entitled to conduct a further review of its contents . . . without seeking a warrant."). Since there is no dispute that the deputies went further than looking at only that which was in plain view on the cell phones, this Court would hold that the search violated Lustig's Fourth Amendment rights. Had he been lawfully arrested for a more serious crime, the calculus would yield a different result.

Deciding that the law enforcement search of Lustig's iPhone and flip phone violated his Fourth Amendment rights, however, does not end the matter. That is because the good faith exception to the exclusionary rule applies here. "The fact

that a Fourth Amendment violation occurred – *i.e.*, that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009), *r'hng denied*, 129 S. Ct. 1692 (2009). "[E]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Schesso*, 730 F.3d at 1050-51 (quoting *Herring*, 555 U.S. at 143).

Lustig was arrested by San Diego County deputy sheriffs. A reasonably well trained deputy would know that the United States Supreme Court permits a search-incident-to-arrest. A reasonably well trained law enforcement officer working in California would also know that the Supreme Court of California has decided that searching a cell phone found on an arrestee incident to a lawful arrest is a permissible exception to the warrant requirement of the Fourth Amendment. *See Diaz*, 51 Cal. 4th 84. Thus, with a recent and authoritative decision from the state's highest court and no binding decisions to the contrary from the federal courts, the law enforcement officers in Lustig's case could not have known that a search beyond plain view of Lustig's iPhone and Kyocera flip phone would run afoul of the Fourth Amendment. The "good faith" inquiry is confined to the question of "whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (quoting *United States v. Leon*, 468 U.S. 897, 922 & n.23 (1984)).

Because a reasonably well trained officer in California would not have known that searching Lustig's cell phones was illegal under the circumstances, the good faith exception applies. Because the good faith exception applies, the exclusionary rule does not apply. There is no reason to suppress the evidence discovered from the search of Lustig's iPhone and Kyocera flip phone. Therefore, the motion to suppress is denied.

To be clear, it does not matter whether deputies would or would not have been

able to obtain a search warrant for the phones pursuant to state law.  After the initial hearing, the government filed a brief conceding that at the time Lustig was arrested for solicitation of prostitution, California state law would not have authorized a search warrant for his cell phones.  "Under California law, the deputies were precluded from seeking a search warrant under California Penal Code Section 1524."  United States' Supplemental Resp., at 6.  Lustig pounced on this concession and argues that, "[t]he government's briefing proves that there was no lawful cause to search the car, the phones within the car, or the phones on Mr. Lustig's person.  For these reasons, Mr. Lustig's motion to suppress should be granted."  Defendant's Resp. to Government's Supplemental Briefing, at 3.  The government's concession does not reinvigorate Lustig's motion.

The deputies' search was justified as an exception to the Fourth Amendment according to federal law.  That a search may not be justified under state law, does require a federal court in a federal prosecution to suppress evidence from a search that is acceptable under federal constitutional decisions.  Lustig's argument may have had more currency prior to 2008.

In 2008, the Supreme Court's decision in *Virginia v. Moore*, 553 U.S. 164, held that police do not violate the Fourth Amendment when they make an arrest, and perform a search incident to the arrest, if the arrest satisfies the federal "probable cause" requirement – even if the arrest violated state law.  553 U.S. at 171-72.  "[W]hen a State chooses to protect privacy beyond the level that the Fourth Amendment requires . . . . We have treated additional protections exclusively as matters of state law."  *Id.* at 171.  *Moore* goes on to teach, where "the arrest rules that the officers violated were those of state law alone . . . it is not the province of the Fourth Amendment to enforce state law.  That Amendment does not require the exclusion of evidence obtained from a constitutionally permissible arrest."  *Id.* at 178.

The Ninth Circuit recognized this shift in its decision in *Edgerly v. City and*

*County of San Francisco*, 599 F.3d 946 (9th Cir. 2010).  For example, Lustig cites *Reed v. Hoy*, 909 F.2d 324 (9th Cir. 1990), *cert. denied*, 111 S. Ct. 2887 (1991), in support.  *Edgerly* overruled *Reed v. Hoy* because of *Moore*: ". . . after the Supreme court decided *Virginia v. Moore*, in which it held that such state arrest restrictions are irrelevant to our Fourth Amendment inquiry . . . . We are now bound by *Moore*, and to the extent that *Bingham* [*v. City of Manhattan Beach*] and *Reed* [*v. Hoy*] are inconsistent with *Moore*, they are effectively overruled."  *Id.* at 956 n.14 (citations omitted).  *Edgerly* points out that the *Moore* principle applies to searches as well as arrests.  *Id.* at 957 n.15.  "As with arrests, state law restrictions on searches do not change Fourth Amendment protections."  *Id.* (citing *Moore*).  In view of *Moore* and *Edgerly*, the government's concession does not change the ruling on Lustig's motion to suppress.

### b. Cell Phones Seized From the Vehicle

After Lustig was arrested inside a hotel, deputies located his car in the hotel parking lot.  When they searched his person, deputies found car keys in Lustig's pockets.  Deputies decided to impound the car and performed an inventory search prior to towing.  Five additional phones were found in the car and their contents were searched.  Lustig also moves to suppress any evidence discovered during the search of the phones found in his car.  On February 26, 2014, Defendant filed a document titled Supplemental Briefing on California Law Governing Impound and Inventory Searches.

As detailed below, the search does not qualify as a search-incident-to-arrest, and the government has not carried its burden to show that the impound and inventory exception justifies the search.  However, the cell phone evidence will not be suppressed because it was ultimately found through the execution of an untainted federal search warrant.  The evidence thus fits within the inevitable discovery doctrine and will not be suppressed.

### i.  Not a search-incident-to-arrest

The search-incident-to-arrest doctrine can support a limited search of a vehicle.  But not under the facts of this case.  Law enforcement officers may search incident to an arrest the space around the arrestee and in his immediate control.  *Arizona v. Gant*, 556 U.S. 332, 339 (2009).   To justify a warrantless search, the search of vehicle must be in close proximity to the arrest, both spatially and temporally.  *United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008); *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010).  The hotel parking lot vehicle search fails both tests.

Here, Lustig was arrested within the hotel.  His vehicle was not within reach and not in his immediate control.  "[S]ome threat or exigency must be present to justify" the searching of an arrestee's vehicle.  *Id.* at 1049.   "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  *Gant*, 556 U.S. at 351.  Assuming for the sake of argument that Lustig qualifies as a "recent occupant," Lustig was not within reaching distance at the time of the vehicle search.      Instead, the government argues the second *Gant* prong.  Yet, there were no observed weapons and no known exigency requiring a search.  One could argue exigency in that digital evidence in the five cell phones could be lost with the passage of time and the possibility of remote wiping, but because the phones were inside the vehicle armrest, deputies would not have been aware of their existence prior to searching the vehicle.  In its brief, the government asserts that, "[i]t was reasonable for the deputies to search the vehicle for any evidence related to solicitation of prostitution."  Resp. Br. at 10.  That, however, is a comment on police investigative technique, *i.e.*, it is reasonable and good police work to look for evidence in a car driven by an arrestee if the car is near the scene of an offense.  In contrast, it is not nearly as clear that the *Gant* test was satisfied, *i.e.*, that *it was reasonable to believe the vehicle*

1  *contained evidence* of the prostitution solicitation offense.  For example, the

2  government argues that since Lustig was carrying two phones in his pockets, it was

3  reasonable to believe that he would have even more phones in his car.  However,

4  another view would be that a person only needs one phone.  And if police find a

5  person carrying two phones, the extra phone is probably the "throw down" phone

6  that can be quickly disposed of along with its incriminating evidence.  In this view,

7  there is little likelihood that the person owns more than two phones.  The

8  government has not offered testimony or expert opinion to support its view.

9  **ii.  Not shown to be an objective inventory search**

10  Although the search of Lustig's vehicle is not justified by the search-incident-

11  to-arrest exception, police officers may perform a warrantless search according to an

12  established policy when a vehicle is lawfully impounded.  This is known as an

13  inventory search.  Under the community caretaking exception, law enforcement

14  officers may tow and impound a vehicle that jeopardizes public safety.  *United*

15  *States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).[5]  "Once a vehicle has been

16  legally impounded, the police may conduct an inventory search, as long as it

17  conforms to the standard procedures of the local police department."  *Id.*

18  ***a.  community caretaking impound***

19  Here, a deputy impounded Lustig's vehicle.  The arrest report (provided by

20  the defense) details the deputy's reasoning.  "To prevent the vehicle from being

21  vandalized or stolen, the vehicle was towed pursuant to 22651(h) CVC [California

22  Vehicle Code] . . . . Prior to the vehicle being towed, an inventory search was

23  conducted."  Arrest Report at 10, Mot. to Suppress, unnamed exhibit page 3 of 4

24  [dkt. no. 25-2].  Defense counsel argued at the hearing that, "there is no

25  authority . . . . for towing a car from private property because the officers claim that

26  they feared it was going to be stolen or vandalized.  That doesn't pass the blush

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[5]Both parties cite to the earlier version of the *Cervantes* opinion found at 678 F.3d 798 (filed May 16, 2012), rather than the amended opinion found at 703 F.3d 1135 (filed Nov. 28, 2012).  The later amendments do not undercut either party's arguments.

1   test."

2   However, that was the precisely the case in *Ramirez v. City of Buena Park*,

3   560 F.3d 1012 (9th Cir 2009).  Ramirez was found inside his car *in a drugstore*

4   *parking lot* and arrested for being under the influence of a controlled substance.  The

5   car was then impounded.  The impound was challenged as violating the Fourth

6   Amendment.  The Ninth Circuit observed, "[l]eaving Ramirez's car in the drugstore

7   parking lot would have made it an easy target for vandalism or theft."  *Id.* at 1025.

8   "Therefore, we conclude that the officers' impoundment of Ramirez's car for its

9   'safekeeping' was reasonable under the community caretaking doctrine."  *Id.* (citing

10  *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993), *cert.*

11  *denied*, *Killeen v. Hallstrom*, 114 S. Ct. 549 (1993) and *United States v. Jensen*, 425

12  F.3d 698, 706 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1664 (2006)); *see also*

13  *Cervantes*, 703 F.3d at 1142 (describing the *Hallstrom* decision as: "upholding the

14  towing of a car from a public parking lot, not a residential street, under the

15  community caretaking exception.").  In view of the fact that the deputy's stated

16  reason for impounding Lustig's car was "to prevent the vehicle from being

17  vandalized or stolen," the impounding was a permissible warrantless seizure under

18  the vehicle impound doctrine.  And because the impound was lawful, the inventory

19  search was lawful.  The discovery of the five cell phones in the center armrest of

20  Lustig's vehicle during the inventory search was also lawful.

21              ***b.  invalid inventory search of phone content***

22  The more vexing problem here is that the deputies went beyond solely

23  searching for and seizing the phones.  According to the arrest report, the deputy

24  conducted "a brief search of the phones result[ing] in additional text messages

25  regarding prostitution."  He then "downloaded the information contained in four of

26  the six phones which had information which I believed [sic] was involved with

27  prostitution."  The deputy also "photographed some of the text messages from the

28  inside of the other five phones as well as their phone number listed inside the

phone."

There are three reasons why a warrantless inventory search is permitted when a vehicle is impounded: (1) for the protection of the vehicle owner's property; (2) for the protection of the police from claims by the owner; and (3) for the protection of the police from potential danger.[6] *South Dakota v. Opperman*, 428 U.S. 364, 369 (1975). Under *Opperman*, the car phone search must be conducted according to an established policy of the law enforcement agency (in this case, the San Diego Sheriff's Office). If a search is conducted according to policy, as opposed to a general rummaging for evidence, then no warrant is necessary. See *Cervantes*, 703 F.3d at 1141. There has been no evidence offered on this point from either party.

The government conducted the warrantless search, consequently, it is the government that bears the burden of demonstrating its search fits the inventory search exception. *Id.* at 1142 & n.1 (government has a "heavy burden" to persuade the court that a seizure comes under the exception to the warrant requirement). To carry its burden, the government must show that the search was performed according to "standardized criteria" or "established routine." *Cervantes*, 703 F.3d at 1141 (quoting *Opperman*, 428 U.S. at 375-76). This is because an inventory search "must not be a ruse for a general rummaging in order to discover evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990); *Cervantes*, 703 F.3d at 1141 (quoting *Wells*).

Without evidence that the vehicle was inventory searched according to department policy or routine, the warrantless search cannot be justified. Moreover, even if there was a policy or established routine that was followed, it is hard to imagine how a policy that instructs law enforcement to search the digital contents of a cell phone found during the inventory search, is designed to foster the approved

---

[6]Searching the contents of a phone found while conducting an inventory search of a vehicle does not appear to respond to any of the three justifications. Had there been satisfactory evidence that Lustig's car phones were searched pursuant to department policy, and the inevitable discovery doctrine did not apply, the Court would need to decide whether an impound and inventory content search would be permissible under *Opperman*.

aims of protecting the owner against loss and protecting deputies against suit or physical danger.  See *Opperman*, 428 U.S. at 369.  As the Court explains, "[t]he policy or practice governing inventory searches should be designed to produce an inventory."  *Wells*, 495 U.S. at 4.  Searching a phone's contents does not produce an inventory of property and undermines the lawfulness of the search.  On the record as it is, it appears that evidence discovered from Lustig's five car phones was not discovered lawfully as it has not been shown to be the fruit of a valid impound and inventory search.

### iii.  inevitable discovery by federal search warrant

Even if the inventory search was invalid, the evidence will not be suppressed because the government eventually did obtain a search warrant for the contents of the car phones.  The application for the search warrant and the agent's declaration under oath are found in the exhibits to Defendant's motion.  This Court has reviewed the application and declaration with an eye toward the origin of the facts described by the agent.  Having reviewed the application, there is no indication that the agent offered tainted evidence.  In other words, the agent's warrant application offers only facts learned from sources other than from evidence discovered in the car phones.  Based on the lawfully obtained evidence described in the application, there was probable cause to believe that evidence of criminal activity would be found on the car cell phones because of the numerous text messages between Lustig and MF2 found in the iPhone and flip phone carried by Lustig at the time of his arrest.  Thus, the search warrant was properly issued, and the car phone evidence was lawfully discovered.

Since the search warrant application was based upon information from the phones seized from Lustig's person incident to a lawful arrest, and that search-incident-to-arrest was proper under state law or under controlling federal law, the car phone evidence found pursuant to the federal search warrant is not tainted by the use of unlawfully obtained evidence.  Therefore, the car phone evidence need not be

suppressed because it was inevitably discovered.[7]  *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Lang*, 149 F.3d 1044, 1047 (9th Cir. 1998), *amended*, 157 F.3d 1161 (9th Cir. 1998), *cert. denied*, 119 S. Ct. 1809 (1999).  Therefore, the motion to suppress the car phone evidence is denied.

## II.  CONSTITUTIONALITY OF 18 U.S.C. §1591

Lustig is charged with violating 18 U.S.C. §1591(a).  He moves to dismiss the indictment arguing that the statute unconstitutionally relieves the government of proving he had a criminal *mens rea*.  This Court disagrees.  The Second Circuit is the only circuit court that has addressed the *mens rea* requirement of §1591 as it applies to minor victims in view of the 2008 amendments to §1591.  It found no constitutional infirmity.  *See United States v. Robinson*, 702 F.3d 22, 32 (2nd Cir. 2012), *cert. denied*, 133 S. Ct. 1481 (2013).  The decision is persuasive.  In contrast, there are no decisions agreeing with Lustig's view of the statute.

Title 18 U.S.C. §1591(a) thru (c) states,

(a) Whoever knowingly –
    (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial

---

[7]There is no declaration or evidence contradicting the truthfulness of the agent's statements made in the search warrant application, so no evidentiary hearing is required.  *See United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 964 (2013)  ("An evidentiary hearing on a motion to dismiss need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.");  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000), *cert. denied*, 122 S. Ct. 76 (2001) (same)*; United States v. Mejia*, 69 F.3d 309, 318 (9th Cir. 1995); *see also United States v. Kyle*, __ Fed. App'x __, 2014 WL 487081 at *2-3 (9th Cir. Feb 7, 2014) ("Although Kyle requested an evidentiary hearing, he never once offered a contrary version of the facts put forth by the government, much less one with 'sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist . . . . ' Rather, his argument was that the facts as proffered by the government did not as a matter of law establish reasonable suspicion to search . . . . . This is an insufficient basis for an evidentiary hearing.") (quoting *Howell*, 231 F.3d at 620-21).

sex act, shall be punished as provided in subsection (b).

(b) The punishment for an offense under subsection (a) is –
>    (1) if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, or obtained had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or
>    (2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, or obtained had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

(c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.

Lustig argues that two phrases in subsection (c), ("in which the defendant had *a reasonable opportunity to observe* the person" and "the Government *need not prove that the defendant knew* that the person had not attained the age of 18 years") (emphasis added), together unconstitutionally eliminate the *mens rea* requirement where the victims are under age 18.  Lustig argues, "[w]hen a defendant has had a 'reasonable opportunity to observe the person,' this section arguably imposes strict liability instead of a traditional scienter requirement for this element of the offense." Mot. at 9.  Lustig then argues that if the statute eliminates a *mens rea* requirement of a victim's age, it would violate the Fifth Amendment's Due Process Clause. *Id.* at 9-10.

The Second Circuit decided that §1591 may, in fact, impose strict liability with regard to a defendant's awareness of the victim's age. *Robinson*, 702 F.3d at 39 ("[W]e hold that . . . §1591(c) . . . imposes strict liability with regard to the defendant's awareness of the victim's age, thus relieving the government of its usual burden to prove knowledge or reckless disregard of the victim's underage status under §1591(a).").  In a case such as this one, where the minor child victims are alleged to have been 14 and 13 years old, the government need not prove knowledge or recklessness, if it can prove the defendant had a reasonable opportunity to observe

the victims. *Id. Robinson* found no constitutional infirmity. The court explained, "[w]e are mindful that criminal statutes are generally construed to include *mens rea* requirements. But that presumption does not apply to sex crimes against minors, at least when the perpetrator confronts the under age victim personally." *Id.* at 32 (citations and quotations omitted).

*Robinson* based that conclusion on its reading of *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n. 2 (1994). *X-Citement* teaches that, "the common-law presumption of *mens rea* recognized that the presumption expressly *excepted* 'sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent.'" 513 U.S. at 72 n. 2. (quoting *Morissette v. United States*, 342 U.S. 246, 251 n. 8 (1952)) (emphasis added). The Supreme Court explains that the opportunity to observe a victim permits one to fairly conclude whether the victim is a minor child. The reasonable opportunity to observe a child victim permits the law's elimination of a knowing requirement regarding her age. For example, "in the criminalization of pornography production . . . the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Id.* Finally, in approving §1591's elimination of a *mens rea* regarding the victim's age, the Second Circuit in *Robinson* noted that other federal child-protective statues have done away with a *mens rea* requirement for the elemental fact of a victim's age. "Courts have uniformly interpreted these provisions as disclaiming *mens rea* requirements with respect to the victim's age." *Robinson*, 702 F.3d at 33 (citations omitted).

Lustig also argues that §1591's legislative history favors *including* at least a "recklessness" scienter requirement. *Robinson* reviewed the legislative history of §1591(c) and came to the opposite conclusion. *Id.* at 34. It summed up its review like this,

> This drafting history helps clarify what is already apparent
> when reading §1591 in its entirety: The government need
> not prove any *mens rea* with regard to the defendant's
> awareness of the victim's age if the defendant had a

1    reasonable opportunity to observe the victim. *Id.*

2    *Robinson* is the only circuit opinion to address §1591(c) and judge the

3    meaning and effect of the "reasonable opportunity to observe the victim" component

4    of the statute.  The opinion is persuasive and leads this Court to agree and conclude

5    that §1591 eliminates a knowing or reckless *mens rea* where the government proves

6    a defendant had a reasonable opportunity to observe the victim and that this

7    approach is not unconstitutional.  Therefore, Lustig's motion to dismiss the

8    indictment is denied.

9                    **III.  YAHOO EMAIL AND CELL SEARCH EVIDENCE**

10    Lustig also seeks to suppress evidence obtained from his email account

11    provider (Yahoo.com) and from his cell phones pursuant to a search warrant based

12    on the government's failure to follow the guidelines set out in the concurring

13    opinion in *CDT III*, 621 F.3d at 1178-80.  The Achilles' heel of this argument is that

14    the guidelines are only guidelines.  They are "non-binding protocols."  *Schesso*, 730

15    F.3d at 1051 & n.9.  The guidelines announced in *CDT III* do not "cast the search

16    protocols in constitutional terms."  *Id.* at 1051.  As *Schesso* points out, *CDT III* did

17    not concern a motion to suppress at all.  *Id.* at 1051; see also *United States v. Rudtke*,

18    slip op. Case No. 11cr4956 WQH, 2014 WL 688800 at *10 (S.D. Cal. Feb. 20,

19    2014) (finding no reason to suppress Yahoo.com email information obtained through

20    search warrant that limited search to evidence related to federal crime charged).  No

21    suppression of Yahoo.com email evidence is warranted.

22    Lustig makes the secondary argument that the search warrants were

23    overbroad.  He offers in support only the applications and search warrants and his

24    speculations in support.  A review of the warrants confirms that the searches

25    authorized were limited in scope to evidence of commercial sex crimes (*i.e.*,

26    violations of 18 U.S.C. §§ 2422 and 1952).  Again, no suppression of evidence is

27    warranted.

28

## IV.  CRAIGSLIST ADMINISTRATIVE SEARCH EVIDENCE

Lustig finally argues, that *if* the government served an administrative subpoena on Craigslist.com for advertisements he posted, it violated the Electronic Communication Privacy Act ("ECPA"), 18 U.S.C. §2510, and any resulting evidence should be suppressed.  Alternatively, he argues that he would have a reasonable expectation of privacy in advertisements he posted on Craigslist.com because he posted them anonymously.  Consequently, he argues, the government was required to obtain a search warrant.

This issue is raised primarily as a question of law, since Lustig knows of an administrative subpoena only by virtue of its description contained in the affidavit supporting the related search warrant for his Yahoo email account.  Assuming for the sake of argument that the government did serve an administrative subpoena on Craigslist.com for copies of Lustig's advertisement postings, Lustig's arguments are unpersuasive.

The ECPA argument rests on the definition of an "electronic communication" found in §2510(12).  There, an "electronic communication" is defined as "any transfer of . . . writing . . . transmitted . . . ."  The government argues that an advertisement posting is not a communication because it may never be received by another person.  An advertisement may be posted for anyone in the world to see, but it is possible that no one will actually look.  The government concedes that another's response to a posting by Lustig would qualify as a communication, but there are no responses at issue here.  Lustig cites no case to support his argument.  The Court's own research found one case.

In *Rudtke*, defense counsel made the identical argument.  The court disagreed. *Rudtke* found the government demand for, and Craigslist.com's disclosure of, Rudtke's Craigslist postings, "did not disclose the content of any communication in violation of the Electronic Communication Protection Act."  2014 WL 688800 at *6. The conclusion makes sense and this Court agrees with *Rudtke*.  The conclusion also

makes sense in view of §2511(2)(g)(i), which specifies that it is *not* unlawful to access a communication in a system configured so that the communication is accessible to the general public.  To the extent Lustig argues that it is his personally identifying information that is not disclosed to the general public in a Craigslist advertisement, and therefore cannot be disclosed to the government, Lustig is incorrect.  Section 2703(c)(2) of the Act permits the government to obtain basic subscriber information with a mere subpoena.  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1180 (9th Cir. 2013).  Of course, the answers to these questions are not dispositive because even if the ECPA was violated, the government points out that violations of the ECPA do not require suppression of evidence.  *United States v Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008).

*Rudtke* also found that a person who posts advertisements on Craigslist does not have a reasonable expectation of privacy.  2014 WL 688800 at *6.  The court found, "Rudtke does not have [a] subjective expectation of privacy that society recognizes as reasonable in his Craiglist postings."  *Id.*  This conclusion was based upon the reasonable observation that, "[a] person has no legitimate expectation of privacy in information voluntarily turned over to a third party with the intent that the information will be shared with anyone with access to the internet."  *Id.* (citations omitted).  Craigslist postings are analogous to Internet bulletin board postings common in the 1990's.  For those type of postings, the Sixth Circuit decided that users lacked a Fourth Amendment expectation of privacy in information voluntarily posted.  *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001).  One can also analogize Craigslist postings to information posted by a user on his Facebook.com or Myspace.com account.  Those postings available for internet viewing are *not* protected by the Fourth Amendment.  *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012).

This Court agrees that, on this record, Lustig did not have a reasonable expectation of privacy in his voluntary Craigslist advertisement postings such that

the government was required to obtain a search warrant.  See *United States v. Williams*, __ Fed. App'x. __ , 2014 WL 644951, *1 (9th Cir. Feb. 20, 2014) ("district court did not err in failing to suppress appellant's answers in the Confidential Pre-Investigative Questionnaire because appellant had no legitimate expectation of privacy in answers that he voluntarily gave in the questionnaire") (citing *United States v. Miller*, 425 U.S. 435, 441-43 (1976)).  Therefore, the motion to suppress the Craigslist information is denied.

## V.  CONCLUSION

Lustig's motions to suppress and his motion to dismiss the indictment are denied in their entirety.

DATED:  March 11, 2014

_____
Hon. Roger T. Benitez
United States District Judge