1  LAURA E DUFFY
   United States Attorney
2  ALESSANDRA P. SERANO
   HELEN H. HONG
3  Assistant U.S. Attorney
   California Bar No.: 204796/235635
4  Office of the U.S. Attorney
   880 Front Street, Room 6293
5  San Diego, CA 92101
   Tel: (619) 546-8104
6  Fax: (619) 546-0510
   Email:  Alessandra.p.serano@usdoj.gov
7
   Attorneys for the United States of America
8

9            **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11  UNITED STATES OF AMERICA,        | Case No.: 13-CR-3921-BEN
12             Plaintiff,            | Date:  July 21, 2014
                                     | Time:  2:00 p.m.
13        v.                         |
                                     | UNITED STATES' NOTICE OF MOTIONS
14                                   | IN LIMINE AND MOTIONS IN LIMINE
                                     | TO:
15  MICHAEL LUSTIG,                  |     (1) Admit Expert Testimony
16        Aka George                 |     (2) Prohibit Certain References to
                                     |         Defendant's Health, Etc.
17        Defendant.                 |     (3) Allow Demeanor Evidence
                                     |     (4) Preclude Witnesses
18                                   |     (5) Preclude Defense Expert
                                     |     (6) Reciprocal Discovery
19                                   |     (7) Allow Attorney Voir Dire
                                     |     (8) Preclude Self-Serving Hearsay
20                                   |     (9)    Admit Business Records
                                     |     (10) Preclude Argument/Testimony that
21                                   |     the Minor "Consented"
                                     |     (11) Preclude Rule 412 Evidence
22                                   |     (12) Admit Rule 404(b) Evidence on
                                     |         Cross-Examination or in Rebuttal
23                                   |     (13) Admit Evidence of Defendant's
                                     |     Participation in Commercial Sex Activity
24

25

26      COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and

27  through its counsel, LAURA E. DUFFY, United States Attorney, and Alessandra P.

28  Serano, Assistant United States Attorney, and hereby files its motion in limine.

These motions are based upon the files and records of the case together with the attached statement of facts, and the memorandum of points and authorities.

# I
## STATEMENT OF THE CASE

On October 23, 2013, a two-count Indictment was returned in the Southern District of California, charging Defendant Michael Lustig ("Lustig") with sex trafficking of a minor in violation of 18 U.S.C. § 1591.

On December 2, 2013, Defendant filed a motion to compel discovery and leave to file further motions.    The next day, the United States filed a response and opposition to the motion.

On December 31, 2013, Defendant filed a motion to suppress evidence based upon the a warrantless search of a cell phone, motion to dismiss indictment because §1591 is unconstitutional, motion to suppress evidence from Yahoo!, Inc. and motion to suppress evidence obtained from administrative subpoena.  On January 10, 2014, the United States filed its response and opposition.

On March 11, 2014, the Court issued a 27-page written opinion denying the motion to suppress evidence and motion to dismiss the indictment.  On March 14, 2014, Defendant filed a motion for reconsideration of the motions.  On April 6, 2014, the United States filed its response and opposition to the motion for reconsideration.

On April 14, 2014, the Court orally denied the motion for reconsideration and set the trial date.

Trial is scheduled for August 4, 2014.

## II

## STATEMENT OF FACTS

### A. The Initial Lead

On June 8, 2012, San Diego Sheriff's Deputies Chase Chiappino and George Crysler, both with the Vista COPPS unit, conducted a "john op" targeting prostitution customers at the Howard Johnson motel in Encinitas, CA.  An online prostitution ad was posted, which Lustig responded to by phone, and stated his name was "George." Upon his arrival, he was arrested for Cal. PC 647(b) (soliciting a prostitute).  The ad Lustig responded to advertised an adult female.

At the time of Lustig's arrest, deputies seized and searched incident to arrest an Iphone (619-791-6552) found in his pocket.  The web browser displayed the online ad for the undercover officer posing as a prostitute.  A second phone (purple Kyocera flip phone with number 619-634-9405) was located in another pocket.  A search of that phone incident to arrest revealed multiple prostitution related texts such as "U wanna hook up for a rewarding time this evening?" "Please confirm u r 18 years or older." "…see if we want a mutually beneficial relationship." "I still have the room if u wanna earn more & finish what we started."

Lustig had a set of car keys in his pocket, but denied that he drove a vehicle to the motel.  However, despite Lustig's lie, deputies located a vehicle that matched the car keys found in Lustig's pocket.  To avoid the vehicle from being damaged or stolen, deputies towed the vehicle and later performed an inventory search.  In the vehicle deputies located five additional phones.  Two of those phones included a Verizon Wireless Samsung cell phone ((619) 977-4300) and a Cricket Samsung cell phone ((619)799-3816), both located in the center console of the vehicle.  Deputies conducted a brief search of the five phones.  The Verizon Wireless Samsung displayed text messages such as, "Hey i have a room", "…you think you can front me the money

for our date…"  The Cricket Samsung cell phone displayed text messages such as, "did you get the room", "today?", "Hey, U free?"

A listing in the Cricket Samsung phone was for "Dominick", which had the number (619) xxx-3539 assigned to it.   Another phone number assigned to "Dominick" was located inside Lustig's iPhone (found in his pocket) was (619) xxx-6033.   Thus, there were two numbers associated with "Dominick" each saved in a different phone belonging to Lustig.

A search through law enforcement databases displayed the latter phone number for "Dominick" as being associated with a twelve year old minor female (MF1). Lustig's Cricket Samsung phone showed 39 text messages to or from MF1 between March 24, 2012 and June 8, 2012.  There were over 110 received, sent or missed calls between Lustig and MF1 between the same dates.

Deputy Chiappino later investigated the contacts inside Lustig's Kyocera flip phone, one of the phones found on his person.   One of the contacts in Lustig's Kyocera phone was under the name of "Andrew" and displayed the telephone number (602) xxx-8687.   Deputy Chiappino conducted a search through law enforcement databases, which displayed that phone number being associated with a 14 year old minor female (MF2).  Lustig's phone displayed over sixty text messages between Lustig and MF2 between October 13, 2011 and December 15, 2011.   These text messages appeared to use words to conceal the true meaning of what they were talking about. Lustig and MF2 used the words "Bookstore" and "Library" as terms to meet up for a date of prostitution.   Some of those text messages read as follows: "Hey is bookstore open at all today I'm in desperate need of books rite now…" "Where are you? CV, LM or ??" "U free sumtime during the next 2 hours?" "Yes wuts tha latest time yu can cum?" "Is tomorrow morning or noon possible if not thts fine but tomorrow would be best for me".

## B. **MF1-2 are Interviewed**

On July 3, 2012, Deputies Crysler and Chiappino contacted MF1 at her residence and interviewed her in reference to the text messages between her and Lustig.  During this interview MF1 identified Lustig through a photographic line up as an individual she knew as "George".  MF1 stated Lustig would pay her $80 each time they met for a "hand job."  MF1 stated she met with Lustig approximately five to seven times between March 2012 and June 2012.  MF1 confirmed her old phone numbers were (619) xxx-6033 and (619) xxx-3539, which matched up with the number Lustig had saved for "Dominick."  MF1 confirmed that she communicated with Lustig via text messaging and verbal conversation with her cell phones.  At the time of her sexual encounters with Lustig, MF1 was 12 years of age.

On July 3, 2012, Deputies Crysler and Chiappino contacted MF2 at her school and interviewed her reference the text messages.  During this interview MF2 identified Lustig through a photographic line up as an individual she knew as "George".  MF2 stated she had full sex with Lustig approximately three times during October and November, 2011. Lustig would pay her $200 each time.  MF2 stated she was thirteen years old while she was involved with prostitution with Lustig.  MF2 confirmed her old phone number was indeed (602) xxx-8687.  MF2 confirmed that she communicated to Lustig via text messaging and verbal conversation using (602) xxx-8687.

## C. **Further Investigation**

Deputies located motel receipts at various motels on El Cajon Blvd under Lustig's name for the date ranges referenced above.  Deputy Chiappino obtained video footage of Lustig in his dark colored sedan with MF1 parked in the parking lot, getting out of the car and entering a room on May 30, 2012.  About 25 minutes later, they exit the room and get back into the car.  MF1 goes in the back seat of the car.

### III

### POINTS AND AUTHORITIES

**A. Admit Expert Testimony**

On June 23, 2014, the United States provided written notice of its intent to call Deputy Chase Chiappino to testify about the download of the cell phones found on Defendant in June 2012.  While the United States does not believe this testimony is expert testimony, out of an abundance of caution it provided notice.

**B. The Court Should Prohibit Certain References**

Evidence of, and thus argument referring to, a defendant's health, finances, education, and potential punishment is inadmissible and improper.

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible."  Moreover, Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy."  § 3.1 (2010 Edition).[1/]  Reference to the Defendant's health, age, finances, education, and potential punishment may be relevant at sentencing. However, at trial, such references are not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

**C. Demeanor Evidence Should Be Admitted**

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew what was on his computers.    Fed.R.Evid. 701; United States v. Hursh, 217 F.3d 761 (9th Cir. 2000) (holding that a jury may consider a

---

[1/]    Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict.  See United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

defendant's nervousness during questioning at Calexico port entry); <u>United States v. Fuentes-Cariaga</u>, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); <u>United States v. Barbosa</u>, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); <u>Unites States v. Lui</u>, 941 F.2d 844, 848 n.2 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendant's demeanor and physical appearance, as they have personal knowledge based upon their observations of Defendant.

**D.** **<u>The Court Should Exclude Witnesses During Trial</u>**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial.  The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team.  As such, the case agent's presence at trial is necessary to the United States.  However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

The Government does not oppose a defense investigator present during the trial.

**E.** **<u>The Court Should Preclude Any Expert Testimony by Defense Witnesses</u>**

The United States has made a request from the Defendant for reciprocal discovery.  As of the date of this filing, counsel has not provided any notice of any purported defense expert.  Accordingly, Defendant should not be permitted to

*United States' Motions in Limine*                                                                 *13-CR-3921-BEN*

1   introduce any expert testimony if he fails to disclose such information in a timely

2   manner.

3   **F.** __Renewed Motion for Reciprocal Discovery__

4           As of the date of the preparation of these motions, Defendant has produced no

5   reciprocal discovery.  The United States requests that Defendant comply with Rule

6   16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires

7   the production of prior statements of __all__ witnesses, except for those of Defendant.

8   Defendant has not provided the United States with any documents or statements.

9   Accordingly, the United States will object at trial and ask this Court to suppress any

10  evidence at trial which has not been provided to the United States.

11  **G.** __Allow Attorney Voir Dire__

12          If the Court permits each party to conduct voir dire, the Government requests

13  that each party be given the same amount of time.

14  **H.** __The Court Should Preclude Self Serving Hearsay__

15          The Defendant must be precluded from introducing his own statements through

16  the testimony of another witness, through prior court pleadings and/or filings, or other

17  written information written by Defendant.  Any such attempt would be impermissible

18  because those statements are hearsay.  While the Government may use the statements

19  of a defendant against him under Federal Rule of Evidence 801(d)(2) (admission by

20  party-opponent), this Rule may not be relied upon by the Defendant because he is not

21  the proponent of the evidence and the evidence is not being offered against him (but

22  rather on his behalf).  Defendant cannot attempt to have "self-serving hearsay"

23  brought before the jury without the benefit of cross-examination by the United States.

24  See e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1987).

25          Nor can Defendant rely on Rule 801(d)(1)(B), which provides that a statement

26  is not hearsay if:

27

28  *United States' Motions in Limine*

*13-CR-3921-BEN*

> The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

A prior consistent statement is not admissible if it is introduced in the absence of impeachment.  See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976) (appellant offered to introduce and play tape recording of interview of appellant and DEA agent to reinforce appellant's credibility).  Moreover, even if the declarant's testimony has been impeached, prior consistent statements are not admissible if the declarant had motive to give false information at the time that the prior out-of-court statement was made.  See United States v. DeCoito, 764 F.2d 690, 694 (9th Cir. 1985) (declarant's prior consistent statement not admissible for purposes of rehabilitation if declarant had motive to lie to avoid prosecution when prior statement was made); United States v. Rohrer, 708 F.2d 429, 433 (9th Cir. 1983) (diagram drawn by declarant not admissible as prior consistent statement because declarant had motive when diagram was made to fabricate, that is, driving better leniency bargain with the government).

Finally, Defendant cannot rely on Rule 803(3), which provides that the hearsay rule does not exclude then existing mental, emotional, or physical condition.  See Fed.R.Evid. 803(3).  Addressing this issue in the context of a "derivative entrapment" defense, the Ninth Circuit affirmed the trial court's exclusion of testimony by a witness that the defendant had told the witness that the defendant was afraid of government agents.  The court relied on the language emphasized above in Rule 803(3), holding that the rule did not except the witness's testimony from the hearsay rule.  See United States v. Emmert, 829 F.2d 805, 809-10 (9th Cir. 1987).

Defendant cannot introduce his own statements through the testimony of another witness or by improper reference during opening statements.  Defendant is

free to provide a statement from the witness stand where he would properly be subject to cross-examination.

## I. Admit Business Records

The United States seeks to introduce certified business records from various motels in the San Diego County area.   All are admissible as business records under Federal Rule of Evidence 803(6).  Pursuant to Rule 803(6), a report or record of acts, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity as a regular practice, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11) or a statute permitting certification, is admissible unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

## J. The Court Should Preclude Any Testimony, Reference or Argument about the Minor's Consent

Any claim that the minor was willing to engage in sexual activities is not a defense to the offense of sex trafficking or other sex crimes involving minors.  See United States v. Brooks, 610 F.3d 1186, 1199 (9th Cir. 2010) (citing United States v. Dhingra, 371 F.3d 557, 567 (9th Cir. 2004)) ("The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."); United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009)(minor victims cannot legally consent to perform sex acts under § 1591); United States v. Street, 531 F.3d 703, 708 (8th Cir. 2008) ("Here the district court properly concluded that consent is not a defense and, because TD's willingness to engage in the acts was irrelevant, Rule 412's consent exception was inapplicable.  Street, however, argues he was not offering the evidence to prove TD willingly engaged in the sexual activity.   Rather, the government was required under 18 U.S.C. § 2251(a) to prove the photographs were

1    taken for the purpose of producing visual depictions of a minor engaged in sexually

2    explicit conduct.").

3        Accordingly, the United States seeks an order to preclude defense counsel from

4    referencing or arguing that the minor "consented" to working as a prostitute for

5    defendant.

6    **K. Exclude Evidence Under Rule 412**

7        Under Rule 412, evidence that a victim "engaged in other sexual behavior" or

8    evidence offered to prove a victim's "sexual predisposition" is "not admissible in any

9    civil or criminal proceeding involving sexual misconduct," except under very limited

10   circumstances.[1]  Fed. R. Evid. 412(a).  Rule 412(b)(1)(A) provides for the admission

11   of specific instances of sexual behavior by the victim in a criminal case to prove "that

12   a person other than the accused was the source of semen, injury or other physical

13   evidence."  Rule 412(b)(1)(B) allows evidence of specific instances of the victim's

14   sexual behavior with the defendant "offered by the accused to prove consent," or

15   offered by the prosecution.  Rule 412(b)(1)(C) allows for the admission of "evidence

16   the exclusion of which would violate the constitutional rights of the defendant."  Rule

17   412 "aims to safeguard the alleged victim against the invasion of privacy, potential

18   embarrassment and sexual stereotyping that is associated with public disclosure of

19   intimate sexual details and the infusion of sexual innuendo into the factfinding

20   process."  Fed. R. Evid. 412, commentary to the 1994 amendments Rule 412 sets forth

21   a specific procedure for determining the admissibility of such evidence.  First, the

22   party seeking to offer the evidence must file a written notice "at least 14 days before

---

23   [1]    A defendant's failure to file a timely motion under Rule 412 is itself grounds to deny the
24   admission of any such evidence at trial.  See Fed. R. Evid. 412(c) (requiring written motion filed 14
     days prior to trial).  See also S.M. v. J.K., 262 F.3d 914, 919 (9th Cir. 2001) ("[W]e hold that the
25   magistrate judge's decision to exclude the evidence as a sanction for failing to comply with Rule 412
     was proper."); B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1106 (9th Cir. 2002) (reversing trial
26   court decision to allow evidence under Fed. R. Evid. 412 in part because "the defendants . . . flouted
     the procedural requirements of Rule 412").  If the defendant fails to timely comply with such notice,
27   the Court could deny the motion.

trial specifically describing the evidence and stating the purpose for which it is offered."  Fed. R. Evid. 412(c)(1).  Before admitting the evidence, the court must conduct an in camera hearing and afford the victim and the parties the right to attend and be heard.  Fed. R. Evid. 412(c)(2).  The pleadings and the record of the hearing must be sealed.  Id.

The Ninth Circuit has interpreted the definition of "past sexual behavior" broadly to include "all sexual behavior of the victim . . . which precedes the date of the trial."  United States v. Torres, 937 F.2d 1469, 1472 (9th Cir. 1991) (upholding the trial court's exclusion of evidence of the minor victim's sexual behavior involving a peer that occurred approximately six months after the defendant allegedly sexually abused the victim).  The Torres court noted that this definition was "in accord with the avowed purposes of the rule," serving to protect victims from the degrading and embarrassing disclosure of intimate details of their lives, encourage reporting of sexual assaults, and prevent wasting time on collateral and irrelevant matters.  Id.

In addition, the rule's exclusion of evidence offered to prove the victim's "sexual predisposition" was "designed to exclude evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder."  Fed. R. Evid. 412, Advisory Committee note.  For example, evidence "relating to the alleged victim's mode of dress, speech, or life-style will not be admissible."  Id.

**1. The Minor Victim's Prior Sexual History is Irrelevant to the Charges Because Consent is Not a Legal Defense**

Here, evidence of the minor victims' prior alleged sexual predisposition falls squarely within the prohibitions of Fed. R. Evid. 412.  See, e.g., United States v. Payne, 944 F.2d 1458, 1469-70 (9th Cir. 1991) (upholding the trial court's exclusion of the evidence of a minor victim's prior sexual conduct with a peer); Torres, 937 F.2d at 1472 (same).  None of the limited exceptions in Rule 412(b) apply.  The source of

semen, injury, or other physical evidence is not in issue here.  Rule 412(b)(1)(A).  Nor is consent at issue, since the consent of a minor victim is not a defense to any of the charges in the second superseding indictment.  Rule 412 (b)(1)(B); Id. at 1473 (the consent exception was inapplicable where "the excluded evidence did not involve past sexual behavior with the defendant and the victim was too young to give valid consent in any event").

While it is true that a defendant has a constitutional right to introduce evidence in their defense [United States v. Bordeaux, 400 F.3d 548 (8th Cir. 2005)], this "right is not without limitation; it may sometimes have to 'bow to accommodate other legitimate interests in the criminal trial process.'"  United States v. Elbert, 561 F.3d 771, 776 (8th Cir. 2009) citing Bordeaux, 400 F.3d at 558.

In Elbert, the Eighth Circuit affirmed the trial court's exclusion of evidence of the minor victims' prior acts of prostitution.  Elbert, 561 F.3d at 776.  Elbert was charged with sex trafficking of children under § 1591, the same statute in this case.  Elbert sought to admit evidence of the minor victims' prior sexual acts of prostitution and the trial court denied that request.  The Eighth Circuit stated "What Elbert fails to recognize is the evidence he wishes to admit does not provide a defense for the crime with which he was charged and convicted."  Id. at 777.   The court further stated that since the victims were minors and could not legally consent, such evidence was irrelevant and not covered by Rule 412.  Id.

This case involves sex trafficking of children.  Consent is not a defense to this charge.  Whether or not the minor victim was sexually active prior to this offense is irrelevant to the charges because a minor cannot legally consent to such conduct.

## 2.   Defendant Cannot Use the Evidence for Impeachment Either

Rule 412 can also preclude or limit any attempts by the accused to cross-examine the victim regarding her past sexual behavior.  While the right to cross-examine a witness is "implicit in the constitutional right of confrontation," the Ninth

Circuit has pronounced that trial judges maintain broad discretion "to impose reasonable limits on ... cross-examination," <u>Torres</u>, 937 F.2d at 1473 (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986))), especially in light of Rule 412. To determine whether a confrontation clause violation has occurred, courts should examine the proposed cross-examination's probative value.  <u>United States v. Payne</u>, 944 F.2d 1458, 1469 (9th Cir. 1991).  In <u>Payne</u>, with regards to alleged inconsistences in the victim's account of the trailer park incident, the court determined that "the probative value of minor inconsistencies regarding an obviously embarrassing situation is virtually nil and does not outweigh the prejudicial effect of introducing [victim's] collateral sexual conduct." <u>Id.</u>

Additionally, "unchastity of a victim has no relevance whatsoever to the [victim's] credibility as a witness."  <u>Elbert</u>, 561 F.3d at 777 citing <u>United States v. Kasko</u>, 584 F.2d 268, 271-2 n.3 (8th Cir. 198).  Again, absent any testimony on direct examination about the victims' prior sexual history or predisposition, there is no reason for the admission of such evidence other than what is clearly disallowed under the rule - to sully the victim in the eyes of the jury.

**L.  Admit Rule 404(b) Evidence on Cross and/or Rebuttal**

On June 23, 2014, the United States provided notice under Rule 404(b) that it intended to offer evidence related to the defendant's prior sexual misconduct with a 12-year old girl in 1985 if (1) the Defendant testifies that he does not have a sexual interest in children and/or (2) there is any argument, cross examination, or insinuation of the same.  In sum, the United States will not seek to admit this evidence during its case-in-chief, but will seek its admission if Defendant presents an affirmative defense or if there is argument or cross examination that he is not sexually interested in children.

Presumably, Defendant will argue that (1) he was not involved in soliciting a minor for prostitution, and/or (2) he did not know how old the minor was during the

relevant time period.   Evidence of Defendant's prior activities, his awareness of factors concerning the minors' age during the relevant time period are probative of his motive, opportunity, intent, knowledge and absence of mistake or accident with the regard to prostituting an underage victim.

When offered for a purpose other than propensity, evidence of other acts is admissible under Rule 404(b) where: (1) the act tends to prove a material point; (2) it is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the act is similar to the offense charged; and (5) the act's probative value is not substantially outweighed by unfair prejudice under Rule 403. United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (citation omitted).

Because the United States is not seeking to admit Defendant's relevant, probative prior conduct to show or argue defendant's propensity, it is admissible. United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance."). The admissibility of prior acts and related conduct is of particular importance in a criminal case where, as here, the defendant's knowledge, intent, absence of mistake or accident is a relevant issue. As the Supreme Court recognized in United States v. Huddleston, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685.

**M. Admit Evidence of the Defendant's Commercial Sex Activity**

The United States seeks to admit evidence of the defendant's participation in commercial sex activity.

### 1. Defendant's Arrest

First, the defendant's initial contact with law enforcement resulted from his response to an online advertisement soliciting customers for commercial sex.  Those facts are both inextricably intertwined to the events leading to his arrest and constitute admissible evidence under Federal Rule of Evidence 404(b).

Evidence of other acts is not subject to Rule 404(b) if "evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012).  "Two general categories of other act evidence may be 'inextricably intertwined' with a charged crime and thus exempted from the requirements of Rule 404(b).  First other act evidence may 'constitute a part of the transaction that serves as the basis for the criminal charge.  Second, admission of other act evidence may be 'necessary . . . to permit a prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." Id.

Here, the evidence forms part of a coherent and comprehensible story regarding the commission of the crime.  In United States v. Shedlock, the Eighth Circuit observed that testimony from a witness that a defendant appeared "extremely agitated" prior to an assault "supported the government's theory that [the defendant] was especially angry that day."  62 F.3d 214, 217 (8th Cir. 1995).  The court concluded that the testimony "is relevant to show that any actions taken by the defendant were intentional and it tends to demonstrate the defendant's state of mind on that afternoon." Id.

In United States v. Ball, the court permitted testimony about a defendant's post-arrest conduct in an assault case.  868 F.2d 984, 988 (8th Cir. 1989).  There, an officer testified that "within a matter of minutes after having forcibly resisted arrest and assaulting [the officer] with a chain, the defendant made unsolicited statements evidencing a continuing intent or desire to do harm to the officers."  Id.  The court

*United States' Motions in Limine*                                                   *13-CR-3921-BEN*

held that "this activity was an integral part of the flow of the entire offense, and is, therefore, relevant."   Id.  As the court elaborated,

> [S]ubsequent events or transactions may be introduced if they are an integral part of the offense for which the defendant is charged. Subsequent events may be an integral part of the offense if such activity is 'so blended or connected with one [offense] on trial as that proof of one incidentally involves the other, or explains the circumstances thereof; or tends logically to prove any element of the crime charged.  Here, the challenged statements clearly explain the circumstances of this incident. Specifically, they illustrate that the assault was not an accident.  The statements tend to prove intent, an element of the crime charged.

> The officer's testimony concerning the post-arrest statements was admissible because it was highly probative of the state of mind of [the defendant] during his contact with the [officers] in the field.  The statements add credence to the officers' story of what actually occurred. Clearly, these statements are part of the res gestae.  Proof of the post-arrest statements incidentally involves proof of the hostility of the [defendant] necessary to commit the assault and explains the hostile circumstances throughout the [defendant's] interaction with the officers.

Id.; see also Dorsey, 677 F.3d at 951-52 (evidence about the defendant's prior possession of a gun, like the gun used for a shooting, admissible as evidence that was inextricably intertwined with proof of the crime).

　　　　Here, the defendant's response to a commercial sex ad is relevant to a coherent telling of the story:  the defendant was consistently and perpetually engaged in commercial sex activities.  Just months after evidence of his last communication with MF1 and MF2, he responded to an online advertisement about prostitution, evidencing his continued participation in commercial sex activity.   The United States must prove that

　　　　　　1. the defendant knowingly transported, obtained or maintained a person

*United States' Motions in Limine*                                                                    *13-CR-3921-BEN*

2.  knowing, or in reckless disregard of the fact that the person had not yet attained the age of 18 years and <u>would be caused to engage in commercial sex acts</u> and

3. the defendant's actions were in or affecting interstate or foreign commerce.

<u>United States v. Todd</u>, 627 F.3d 329, 334 (9th Cir. 2010); 18 U.S.C. §1591(a), (b).

The evidence is likewise admissible under Rule 404(b).

Rule 404(b) is one of inclusion, and "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." <u>United States v. Sneezer</u>, 983 F.2d 920, 924 (9th Cir. 1992); <u>see also</u> <u>United States v. Hinostroza</u>, 297 F.3d 924, 928 (9th Cir. 2002) ("The only time such evidence may be excluded by Rule 404(b) is if the evidence 'tends to prove only criminal disposition.'") (citation omitted); <u>United States v. Cruz-Garcia</u>, 344 F.3d 951, 954 (9th Cir. 2003) ("[W]e have held that Rule 404(b) is one of inclusion, and if evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it.") (citation omitted).

Evidence offered to prove something other than propensity - such as intent, knowledge, or absence of mistake or accident - falls within the scope of Rule 404(b). This list is illustrative, not exhaustive. <u>Cruz-Garcia</u>, 344 F.3d at 955; <u>United States v. Johnson</u>, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance.").

Rule 404(b) is of particular importance in a criminal case where, as here, the defendant's intent is a relevant issue. As the Supreme Court recognized in <u>United States v. Huddleston</u>, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue

*United States' Motions in Limine*                                         *13-CR-3921-BEN*

involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685.

When offered for a purpose other than propensity, evidence of other acts is admissible under Rule 404(b) where: (1) the act tends to prove a material point; (2) it is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the act is similar to the offense charged; and (5) the act's probative value is not substantially outweighed by unfair prejudice under Rule 403. United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (citation omitted). Application of these five factors to the defendant s aggressive behavior weighs heavily in favor of admissibility.

First, the evidence is material to the issues of intent, knowledge and absence of mistake or accident. See Ball, 868 F.2d at 989 ("The lack of other evidence establishing the defendant's intent to commit assault indicates that resort to evidence of the post-arrest statements was necessary and not unfairly prejudicial."). The defendant's continued participation in commercial sex acts is probative of his knowledge, intent, absence of mistake that (and motivation for) MF1 and MF2 being caused to engage in commercial sex activity as well, because that is what he did.

Second, the "other act" evidence is not too remote in time. Indeed, it was immediately following his contacts with the minors. There is no bright-line rule requiring exclusion of other act evidence after a certain period of time has elapsed. United States v. Brown, 880 F.2d 1012, 1015 n.3 (9th Cir. 1989). Even a period of years has been held to be sufficiently recent for the purposes of Rule 404(b). See, e.g., Flores-Blanco, 623 F.3d at 919 ( The prior acts, which took place approximately two years before the present offenses, were not too remote in time. ); United States v. Dhingra, 371 F.3d 557, 566 (9th Cir. 2004) (other act that occurred 3 years earlier properly admitted); Johnson, 132 F.3d at 1283 (upholding admission of other act that occurred 13 years before charged crime).

Third, there is sufficient evidence to support a jury finding that the defendant did, in fact, engage in commercial sex activity.  Other act evidence under Rule 404(b) should be admitted if "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act."  <u>Huddleston</u>, 485 U.S. at 685.  "[T]he testimony of a single witness . . . satisfies the low-threshold test of sufficient evidence for the purposes of Rule 404(b)."  <u>Dhingra</u>, 371 F.3d at 566. There will be a number of witnesses who will easily meet this threshold.

Fourth, the defendant's continued engagement in commercial sex activity—at a motel, no less---is sufficiently similar to his relationship with MF1 and MF2.

Fifth, the evidence is admissible under Rule 403 because it was highly probative and was "not the sort of conduct which would provoke a strong and unfairly prejudicial emotional response from the jury." <u>Ramirez-Jiminez</u> 967 F.2d at 1327; see also <u>Flores-Blanco</u>, 623 F.3d at 920 ("The evidence was probative of [the defendant's] knowledge and intent and not of the type that would provoke an unfairly prejudicial emotional response."); <u>United States v. Mende</u>, 43 F.3d 1298, 1302 (9th Cir. 1995) (Rule 403 is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence") (citation omitted).  Moreover, any marginal danger of unfair prejudice may be "minimized by the district court's limiting instruction." <u>Plancarte-Alvarez</u>, 366 F.3d at 1063.

### 2.   Defendant's Email, Text Messages and Other Admissions About Engaging Commercial Sex Activity

Defendant has made a series of admissions about his participation in commercial sex activity and his knowledge of commercial sex activity.  As described above, his phones were replete with text messages soliciting commercial sex.  So, too, in his emails and chat messages.  For example, in a chat dated May 18, 2012, the defendant advised an

18-year old college freshman about how to make money by engaging in commercial sex activity:

- boband619(09:36:54 (UTC)):You're already 90% there. You've got the experience, the desire, the attitude, the shaved pussy. Your schtick is to be the "little girl," pre-puberty. Small tits, no hair, petite and young looking. You'd probably get about 120 or 140 per cock. If you were set up on a Friday or Sat. night, you could charge 150 for a half hour and 200 for an hour, or maybe even more. You could make the rounds of So. Calif., one night in SD, another in Riverside Co., another in Orange Co., and several in L.A., if you wanted. You'd clean up.
- These little boys know that, and play on it totally, to get these girls to whore themselves. They then turn every dime over to their pimp, sometimes $2,000 a day/night. . . . They like pleasing the pimp. One girl did it for a pimp who was locked up and whom she never had seen!! She was controlled by his girl friend. $40,000 per month she was pulling in. Amazing! She was doing 10 to 20 car dates on El Cajon Bl per day.
- boband619(09:05:52 (UTC)):Got it. We'll advertise for them to come and fuck you and get several hundred responses you can choose from. I've done that before.. . . Yes, with pics of their faces, bodies and cocks. You get to chose from the Hometown Buffet of sex.. . . Then we can gangbang and even charge to build up you bank account.
- boband619(08:33:16 (UTC)):Tons of stories like that. And if you go on Facebook (used to be on My Space), you can see these girls and guys seem to know each other. A whole social network. A subculture of underage girls working for underage guys, out of sight of the news, the police, etc., unless po-po are paid off, which could be. I've heard those stories too. Blowjobs and sex. Or half-and-half (both bj and sex). Whatever the customer wants.. .. .One girl would go with her girl friend to batchlor parties and stay in bed while guys would come in all night long, pay $90 each and have sex. . . . You are right. But at that point, it's a job.

In other chats, the defendant evidenced his interest and motivation for finding young girls to engage in commercial sex activity:

- boband619(05:57:46 (UTC)):Yes, I have tons of kids. Being a daddy and playing that role is sort of a turn on for me. That would be the flip side of you liking to be taken care of. I like to be the provider.

Because the evidence (1) the act tends to prove a material point (both his knowledge of age of MF1 and MF2, and his knowledge that they would be caused to engage in commercial sex activity with him (because he is "turned on" by acting as a provider); (2)

*United States' Motions in Limine*  *13-CR-3921-BEN*

it is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the act is similar to the offense charged; and (5) the act's probative value is not substantially outweighed by unfair prejudice under Rule 403, it is admissible under Rule 404(b).

## IV

## CONCLUSION

For the above stated reasons, the United States respectfully requests that United States' motions be granted.

DATED: July 7, 2014                    Respectfully submitted,

                                       LAURA E. DUFFY
                                       United States Attorney

                                       /s/Alessandra P. Serano
                                       ALESSANDRA P. SERANO
                                       Assistant United States Attorney

                                       /s/Helen H. Hong
                                       HELEN H. HONG
                                       Assistant United States Attorney

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13-CR-3921-BEN |
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| MICHAEL LUSTIG, | |
| Defendant | |

IT IS HEREBY CERTIFIED THAT:

I, Helen H. Hong, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' motions in limine, together with memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Timothy Scott, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2014.

s/Helen H. Hong
HELEN H. HONG