Laura E. Duffy
United States Attorney
Alessandra P. Serano
Assistant U.S. Attorney
Cal. State Bar No. 204796
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-8104
Alessandra.p.serano@usdoj.gov

Attorneys for the United States of America

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>　　vs.<br>MICHAEL LUSTIG,<br><br>　　　　　Defendant. | Case No.: 13CR3921-BEN<br><br>Date: August 5, 2014<br>Time: 9:00 a.m.<br><br>UNITED STATES' TRIAL MEMORANDUM |

　　　The United States of America, by and through its counsel, Laura E. Duffy, United States Attorney, and Alessandra P. Serano, Assistant U.S. Attorney, files its trial memorandum.

//

//

//

//

1

# I

# STATEMENT OF THE CASE

## A. INDICTMENT

On October 23, 2013, a federal grand jury returned a two-count indictment charging defendant Michael Lustig aka "George" with two counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591, and criminal forfeiture.

## B. TRIAL STATUS

A jury trial is scheduled for Tuesday, August 5, 2014, before the Honorable Roger T. Benitez. The United States' case-in-chief is expected to last two days.

## C. STATUS OF COUNSEL

Defendant is represented by retained counsel, Timothy Scott.

## D. CUSTODY STATUS

Defendant is in federal custody.

## E. INTERPRETER

The United States will not require an interpreter for any of its witnesses.

## F. JURY WAIVER

The parties have not waived their right to a trial by jury.

## G. PRETRIAL MOTIONS AND MOTIONS IN LIMINE

On December 2, 2013, Defendant filed a motion to compel discovery and leave to file further motions. The next day, the United States filed a response and opposition to the motion.

On December 31, 2013, Defendant filed a motion to suppress evidence based upon the a warrantless search of a cell phone, motion to dismiss indictment because §1591 is unconstitutional, motion to suppress evidence from Yahoo!, Inc. and motion to suppress evidence obtained from administrative subpoena. On January 10, 2014, the United States filed its response and opposition.

On March 11, 2014, the Court issued a 27-page written opinion denying the motion to suppress evidence and motion to dismiss the indictment. On March 14, 2014, Defendant filed a motion for reconsideration of the motions. On April 6, 2014, the United States filed its response and opposition to the motion for reconsideration.

On April 14, 2014, the Court orally denied the motion for reconsideration and set the trial date.

On July 7, 2014, Defendant filed three motions in limine: (1) motion for reconsideration the warrantless search of the cell phones; (2) motion to exclude evidence of the minors' ages and (3) motion to preclude 404(b) evidence.

On July 21, 2014, the Court denied the motion for reconsideration of the motion to suppress and motion to exclude evidence of the minors' ages, but granted the motion to preclude 404(b) evidence relating to the 1985 conduct.

**H. STIPULATIONS**

The parties have not entered into any stipulations.

**I. DISCOVERY**

The United States has complied, and will continue to comply, with its discovery obligations. Defendant has not produced any reciprocal discovery.

## II

## STATEMENT OF FACTS

**A. Initial Contact**

On June 8, 2012, San Diego Sheriff's Deputies Chase Chiappino and George Crysler conducted a "john op" targeting prostitution customers at the Howard Johnson motel in Encinitas, California. An online prostitution ad for an adult female was posted. A person identifying himself as "George" contacted the phone number on the ad and requested "full sex." "George" was advised of the location

3

of the female. "George" later called back and said he was in the parking lot of the hotel. The undercover officer told "George" she was in room 235.

At approximately 10:05 p.m., "George" later identified as Defendant Michael Lustig knocked on the door of room 235. Defendant entered and wanted to touch the undercover officer. The officer stated he had to pay the money first. Defendant stated the situation was "all too suspicious" and left the room. He was arrested outside the room for soliciting prostitution in violation of California PC 647(b).

### B. **Multiple Phones are Located**

At the time of his arrest, Deputy Chiappino seized an Iphone (619-791-6552) found in Lustig's pants pocket. The web browser displayed the ad advertising the undercover officer as a prostitute. A second phone (Kyocera flip phone 619-634-9405) was located in another pants' pocket. Deputy Chiappino also located bottles of lubricant and cash in a jacket pocket.

A search of the Kyocera phone revealed multiple prostitution related texts such as "U wanna hook up for a rewarding time this evening?" "Please confirm u r 18 years or older." "…see if we want a mutually beneficial relationship." "I still have the room if u wanna earn more & finish what we started."

Deputy Chiappino located a set of car keys on his person. Defendant denied having a car and stated he walked to the hotel. Deputies took the keys and located a black 2011 Lincoln MKZ in the Howard Johnson parking lot.

A search of his vehicle revealed five additional phones in the center armrest of the vehicle. The data of all five phones was downloaded. Of the five phones, two phones had text messages relating to prostitution: a Verizon Wireless Samsung cell phone ((619) 977-4300) and a Cricket Samsung cell phone ((619)799-3816).

A listing in the Cricket Samsung phone was for "Dominick", which had the number (619) 381-3539 assigned to it. Another phone number assigned to "Dominick" was located inside Lustig's iPhone was (619) 647-6033. Thus, there were two numbers associated with "Dominick" each saved in a different phone belonging to Lustig.

A search through law enforcement databases revealed the phone number for "Dominick" 619-381-3539 as being associated with a twelve year old minor (DOB 2/2000) female (hereinafter "MF1"). Lustig's Cricket Samsung phone showed dozens of text messages to or from MF1 between March 24, 2012 and June 8, 2012. There were over 100 received, sent or missed calls between Lustig and MF1 between the same dates.

Deputy Chiappino later investigated the contacts inside Lustig's Kyocera flip phone. One of the contacts in Lustig's Cricket Kyocera phone was under the name of "Andrew" and displayed the telephone number (602) 930-8687. Deputy Chiappino conducted a search through law enforcement databases, which displayed that phone number being associated with a 14 year old (DOB: 1/1998) minor female (hereinafter "MF2"). Lustig's Kyocera phone displayed over sixty text messages between Lustig and MF2 between October 13, 2011 and December 15, 2011. Lustig and MF2 appeared to use the words "Bookstore" and "Library" as terms to meet up for a date of prostitution. Some of those text messages read as follows: "Hey is bookstore open at all today I'm in desperate need of books rite now…" "Where are you? CV, LM or ??" "U free sumtime during the next 2 hours?" "Yes wuts tha latest time yu can cum?" "Is tomarrow morning or noon possible if not thts fine but tomarrow would be best for me".

In sum, Lustig's phone analysis revealed as follows:

The Samsung Cricket phone had MF1 saved as "Dominick" with 39 text messages between March 24, 2012 and June 8, 2012 and 89 calls between March 26, 2012 and June 8, 2012.

The Samsung Verizon phone had MF1-2 saved under "Dominick" and "Andre." Two calls between MF2 and Lustig – one incoming on August 24, 2011 and one outgoing on September 11, 2011.

The Kyocera flip phone had MF2's number saved as "Andrew." Multiple text messages between MF2 and Lustig between October 11, 2011 and June 12, 2012. There were six incoming calls and five missed phone calls between MF2 and Lustig between October 10, 2011 and November 15, 2011.

The IPhone had both MF1-2 saved as "Dominick" and "Andre."

### C. **MF1-2 are Interviewed**

On July 3, 2012, Deputies Chiappino and Crysler contacted MF1 at her residence and interviewed her in reference to the text messages between her and Lustig. During this interview, MF1 identified Lustig through a photographic line up as an individual she knew as "George". MF1 stated Lustig would pay her $80 each time they met for a "hand job." MF1 stated she met with Lustig approximately five to seven times between March 2012 and June 2012. MF1 confirmed her old phone numbers were (619) 647-6033 and (619) 381-3539, which match up with the numbers Lustig had saved for "Dominick." MF1 confirmed that she communicated with Lustig via text messaging and verbal conversation with her cell phones.

On July 3, 2012, Deputies Chiappino and Crysler contacted MF2 at her school and interviewed her reference the text messages. During this interview MF2 identified Lustig through a photographic line up as an individual she knew as "George". MF2 stated she had full sex with Lustig approximately three times

6

during October and November, 2011. Lustig would pay her $200 each time. MF2 stated she was thirteen years old while she was involved with prostitution with Lustig. MF2 confirmed her old phone number was indeed (602) 930-8687. MF2 confirmed that she communicated to Lustig via text messaging and verbal conversation using (602) 930-8687.

### D. Additional Investigation

The minors' phone numbers were analyzed. MF1's phone 619-381-3539 showed multiple calls with Lustig as early as April 15, 2012. Records were not available before April 15, 2012. MF1's second phone (619-647-6033) showed no toll records with Lustig.

MF2's phone 602-930-8687 showed multiple contacts with Lustig between October 11, 2011 and June 12, 2012.

Deputies located motel receipts at various motels on El Cajon Blvd under Lustig's name in 2011-12. Deputy Chiappino obtained video footage of Lustig in his dark colored sedan with MF1 parked in the parking lot, getting out of the car and entering a room on May 30, 2012. About 25 minutes later, the video shows both exiting the room and back to the car. MF1 gets in the back seat of the car.

## III

## PERTINENT LAW

### A. 18 U.S.C. §1591 – Sex Trafficking of a Child (Minor Under Age 14)

The elements are:

1. the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained a person <u>OR</u> benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described above,

2. the defendant knowing, or in reckless disregard of the fact that the person had not yet attained the age of 14 years and would be caused to engage in

commercial sex acts and the defendant had a reasonable opportunity to observe the person and

    3. the defendant's actions were in or affecting interstate or foreign commerce.

    United States v. Todd, 627 F.3d 329, 334 (9th Cir. 2010); 18 U.S.C. §1591(a), (b).

    §1591(c) provides that in "any prosecution under (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove the defendant knew the person had not attained the age of 18 years." United States v. Robinson, 702 F.3d 22 (2nd Cir. 2012)(holding that gov't need only show reasonable opportunity to observe to meet mens rea requirement); United States v. Phea, 2014 U.S. App. LEXIS 11040 (5th Cir. June 13, 2014).

    Section 1591 is limited, explicitly, to "commercial sex acts," which, by definition, are economic in nature. United States v. Morrison, 529 U.S. 598 (2000) ("Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained."). Congress has expressly determined that sexual trafficking has a substantial effect on interstate commerce. See 22 U.S.C. § 7101(12); United States v. Evans, 476 F.3d 1176 (11th Cir. 2007)(holding purely intrastate prostitution activity under §1591 "contributes" to the interstate and international market Congress scheme seeks to stop" thus meeting the interstate commerce element). The link between sexual trafficking and interstate commerce is analogous to the link between interstate commerce and drug trafficking, which the courts have held Congress may regulate under the Commerce Clause. See United States v. Todd, 627 F.3d 329, 334 (9th Cir. 2010); United States v. Tisor, 96 F.3d 370, 375 (9th Cir. 1996); United States v. Kim, 94 F.3d 1247, 1249-50 (9th Cir. 1996). An act or transaction that is economic in

nature and affects the flow of money in the stream of commerce to any degree, however minimal, "affects" interstate commerce. Gonzalez v. Raich, 545 U.S. 1, 17 (2005); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 255-56 (1964); United States v. Feola, 420 U.S. 671, 677 n.9 (1975); United States v. Evans, 476 F.3d 1176 (11th Cir. 2007); United States v. Pipkins, 378 F.3d 1281, 1295 (11th Cir. 2004), *vacated on other grounds*, 544 U.S. 902, *opinion reinstated*, 412 F.3d 1251 (11th Cir. 2005); 22 U.S.C. §7101(b).

Consent by a minor is not a defense. United States v. Raplinger, 555 F.3d 687, 691-2 (8th Cir. 2009); United States v. Dhingra, 371 F.3d 557, 567 (9th Cir. 2004); United States v. Rashkovski, 301 F.3d 1133, 1137 (9th Cir. 2002).

The Eighth Circuit explicitly held that §1591 applies to both "suppliers and customers" of commercial sex acts. In United States v. Jungers, 702 F.3d 1066 (8th Cir. 2013), the court reversed and remanded a Rule 29 motion. Undercover police operating Sioux Falls, South Dakota placed several online advertisements targeting people who wanted to have sex with children. Once such ad was purportedly from a father offering his twin daughters (age 14) and another for an 11 year old child for sex in exchange for money. Several "customers" responded via email and agreed to meet with the "father." When they showed up and paid the money, each defendant was arrested for attempted commercial sex trafficking under §§1591/1594. At trial, the district court granted a Rule 29 motion finding that §1591 did not apply to customers of child sex trafficking.

The Eighth Circuit reversed, finding that looking at the statute itself, there was no "customer exception." Under §1591(a)(1), a person violates the statute if they "obtain" or "transport" a child for the purpose of a commercial sex act. The provision does not limit potential violators to traffickers or pimps. In looking at Jungers trial record, the United States showed that Jungers sought to procure an

9

eleven year old girl for the purpose of her to perform oral sex on him based upon text messages he had sent to the undercover. Accordingly, the appellate court sent the case back for sentencing.

### B. Criminal Forfeiture – 18 U.S.C. §1593

The United States also alleges criminal forfeiture under 18 U.S.C. §1593. The United States intends to present evidence that the items listed in the indictment were used in the commission of the offenses charged.

#### 1. General Procedures

The indictment in this case includes forfeiture allegations. Entry of an order of forfeiture in a criminal case is considered a part of sentencing. Libretti v. United States, 116 S. Ct. 356, 363 (1995). Nevertheless, the factual determination as to whether any property was involved in or derived from an offense is a matter submitted to the jury if requested by either the Government or the Defendant. Federal Rule Crim. Pro. 32.2(b). If a timely request for bifurcated proceedings is made, certain procedures are required at trial. In the Ninth Circuit, a modified bifurcated procedure is necessary. In United States v. Feldman, 853 F.2d 648, 662 (9th Cir. 1988), cert. denied, 489 U.S. 1030, the court stated:

> We therefore exercise our supervisory power to hold that trial courts should bifurcate forfeiture proceedings from ascertainment of guilt, requiring separate jury deliberations and allowing argument of counsel. The trial judge may exercise discretion in deciding whether or not to hold an evidentiary hearing.

The sole issue to be determined by a jury in a bifurcated trial is whether the Government has established the requisite nexus between the property and the offense committed by the defendant. The jury does not order the forfeiture of property; nor does it consider third-party claims. Fed. R. Crim.P. 32.2(b), (c). In

this regard, the government will submit separate proposed jury instructions and a proposed special verdict form. The jury's special verdict will serve as the basis for this Court to enter a preliminary order of forfeiture. Fed.R.Crim.P. 32.2(b)(2), (3). The final order of forfeiture will follow notice and advertisement of the preliminary order and will address any third-party claims. Fed.R.Crim.P. 32.2(b)(2), (c).

The United States notes that <u>Feldman</u> was a case involving a Racketeer Influenced and Corrupt Organization (RICO) forfeiture, which requires that the trier of fact determine the amount of "tainted" value of a defendant's interest in (or, e.g., claim against) an "enterprise," which can involve complex matters of proof. <u>See</u> 18 U.S.C. § 1962(a)(1)(A).

In this case, however, there is no such complexity. The United States is seeking criminal forfeiture of the cellphones and the vehicle used in the commission of the offenses listed in the indictment.

The United States requests that, if this case is tried to a jury, that the jury in the first instance not be informed of the criminal forfeiture count, but hear evidence on and deliberate as to Counts 1-2 only. In the event that the jury returns a verdict of guilty on any of the counts listed in the indictment, that they hear argument of counsel on the forfeiture allegations and that they then be instructed and deliberate upon a special verdict as to the criminal forfeiture allegations. The United States does not believe that additional evidence on the forfeiture is likely to be necessary.

Federal Rule of Criminal Procedure 32.2(a) states:

> **Notice to the Defendant.** A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as

part of any sentence in accordance with the applicable statute.

In this case, the criminal forfeiture allegations fully allege and describe the property subject to forfeiture.

A special verdict should be provided to the jurors for their use, if they are called upon to deliberate on the nexus between the criminal activity that forms the basis for the convictions and the criminal forfeiture allegations.

### 2. Burden of Proof

Criminal forfeiture is considered to be a penalty or sentencing provision, and not a separate offense. Libretti v. United States, 116 S. Ct. 356, 363 (1995). As such, the burden of proof upon the United States to support a special verdict of forfeiture is "preponderance of the evidence" rather than "beyond a reasonable doubt." United States v. Hernandez-Escarsega, 886 F.2d 1560, 1566-67 (9th Cir. 1989), cert. denied, 497 U.S. 1003. (This difference of burdens also supports the bifurcation of proceedings, as less likely to confuse the jury.)

### 3. Exclusion of Claims of Third-Party Ownership

Evidence, if any, of interest held by third parties in the property the United States is seeking to forfeit is irrelevant in the criminal phase of this trial. The jury does not consider whether the defendant has an interest in the property to be forfeited; nor does the jury determine the extent of the defendant's interest in any property to be forfeited. These matters are considered by the court in the ancillary proceedings, following the jury's special verdict and entry of the preliminary order of forfeiture. Fed.R.Crim.P. 32.2(b), (c); Advisory Committee Note to Subsection (b). The government is seeking to forfeit the interest held by the defendant in the property. The claims of any third parties to the property are dealt with in the ancillary proceeding after the order of forfeiture. Title 21, U.S.C., Section 853(n) sets forth specific procedures to be used by third-party claimants to forfeited property, all of which take place following an order of forfeiture. It is clear that

claims of third party ownership cannot defeat the initial forfeiture proceedings or an order of forfeiture issued thereon, but are separate, post-order matters. Evidence of any third-party ownership of the property should be excluded until an order forfeiting all of the defendant's right, title, and interest in the property has issued.

## IV

## WITNESSES

The United States reserves the right to change the order of, substitute, or add or omit one or more witnesses. The United States expects to call the following witnesses during its case-in-chief:

1. MF1
2. MF2
3. Deputy Chase Chiappino
4. Special Agent Lana Sabata
5. Deputy George Crysler

## V

## EXHIBIT LIST

A final exhibit list will be provided at trial. The United States anticipates offering the following exhibits at trial, all of which have been produced or otherwise made available to counsel. The United States reserves the right to add, delete, or amend its exhibit list.

1. Video surveillance from Ace Hotel
2. Hotel receipts
3. Phone extractions/text messages
4. Photos
5. Phone records

6. Emails

# VI
# VOIR DIRE

The United States request that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury instructions:

1. Of those of you have sat on criminal juries, whose jury reached a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Have you, your relatives, or your close friends been investigated, arrested, accused, or charged with a crime? A sex crime? A sex crime involving children?
5. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
6. Does everyone understand that as a juror you are not to consider prejudice, pity, or sympathy in deciding whether the Defendant is guilty or not guilty?
7. Does anyone think that, regardless of the strength of the evidence, they will have trouble deciding whether the Defendant is guilty or not guilty?
8. Does anyone think they cannot decide whether a person is guilty or not guilty?

9. Does anyone have religious or moral beliefs which will make it difficult for them to make a decision strictly based on the law and facts of this case?

10. Does anyone believe that prostitution should be legal? How about prostitution of minors under age 18? How about engaging in commercial sex with minors?

11. If selected as a juror, you will have to hear evidence involving the sexual exploitation of a minor. The evidence may be distasteful, offensive, and unpleasant to hear. However, the prospect of having to see or hear distasteful, offensive or unpleasant evidence is not a basis to avoid the responsibility of jury service. Many cases, both criminal and civil, involve unpleasant things. If we excused prospective jurors on the ground that jury duty makes demands - including some unpleasant demands - then we could not function. Moreover, the parties have the right to expect that prospective jurors will not seek to avoid jury service simply because they would rather not serve, or because they would like to avoid some unpleasantness. Having said that, is there anyone who honestly believes there is some compelling reason why he or she could not be an impartial juror - that is to consider all of the evidence and follow the law - simply because evidence of sexual exploitation of a minor will be presented as evidence in the trial?

The United States respectfully reserves the right to submit additional questions prior to trial.

# VII
# **JURY INSTRUCTIONS**

The United States will submit proposed instructions to the Court the morning of trial. The United States reserves the right to request additional instructions during the course of the trial.

DATED: July 30, 2014                    Respectfully submitted,

                                        LAURA E. DUFFY
                                        United States Attorney

                                         s/Alessandra P. Serano
                                        ALESSANDRA P. SERANO
                                        Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 13CR3921-BEN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| Michael Lustig, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, ALESSANDRA P. SERANO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Trial Memo on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Tim Scott, Esq.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 30, 2014

                                            s/Alessandra P. Serano
                                            ALESSANDRA P. SERANO